102 N.J. Super. 134 (1968)
245 A.2d 512
FRANCIS WALSH AND FRANK BERNAT, PLAINTIFFS-APPELLANTS,
v.
MADISON PARK PROPERTIES, LTD., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1968.
Decided July 12, 1968.
*136 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Howard L. Ballen argued the cause for appellants (Messrs. Goldstein & Ballen, attorneys; Mr. Paul O'Rourke, of counsel and on the brief).
Mr. Mark D. Larner argued the cause for respondent (Messrs. Budd, Larner, Kent & Gross, attorneys; Mr. Larner on the brief).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiffs Francis Walsh and Frank Bernat appeal from a judgment in favor of defendant following granting of defendant's motion for involuntary dismissal at the close of their case.
The case was tried before the court and a jury. From the proofs as they existed at the close of plaintiffs' case, the jury could have found that plaintiffs were members of the Fire Department of the City of Passaic and on March 23, 1965 were detailed (with two other firemen) to duty which involved the inspection of fire escapes and other safety equipment in buildings in the City of Passaic. In the performance of their duty they were required to inspect defendant's building at 376 Paulison Avenue, Passaic. After making the purpose of their visit known to the wife of the superintendent of the building, they made a visual check of the outside fire escape prior to proceeding with their inspection.
The fire escape consisted of a series of iron balconies on the front of the building which were connected to one another by iron ladders. The connection to the ground was by way of an iron ladder which normally was held in an elevated position by a counterweight which was joined to it by a wire rope which passed over a pully above. In normal operation, when *137 the balance between the ladder and the counterweight would be overcome by pulling on the ladder or by the weight of a person standing on it, the ladder would be lowered until it reached the ground. When released the ladder would normally return to the raised position. If the ladder could not be moved and continued to stick, it was the duty of the inspector to report it to the Fire Prevention Bureau.
When the visual check revealed nothing amiss Walsh and Bernat, following normal procedure, proceeded to pull on one of the rungs of the hanging ladder with a "pike pole" for the purpose of attempting to draw it down to ground level. When it failed to move and a further visual inspection revealed no apparent defect, they concluded, allegedly relying on past experience, that the ladder was stuck because of paint or rust. They thereupon proceeded to put up an extension ladder next to it and, while Walsh steadied the ladder, Bernat climbed up and first attempted to loosen the stuck ladder by shaking it. When it did not immediately move Bernat put his left foot on one of its rungs. When he did so the ladder started to move and descended at such a rate of speed that Bernat was forced to "ride" it to the sidewalk level. As he stepped away from it onto the sidewalk the pulley and its supporting bracket came down, causing both plaintiffs to be injured. The pulley and bracket presumably had broken away, or come loose from their point of attachment at the fourth floor level.
At the conclusion of plaintiffs' case defendant's motion for involuntary dismissal was granted on the ground that (1) the defendant, as landowner, was obligated to give protection only against known defects; (2) proof was lacking that defendant had knowledge of any defect which could have occasioned plaintiffs' injuries; (3) res ipsa loquitur was not applicable; (4) the statutory obligation to keep fire escapes in tenement houses in good repair, N.J.S.A. 55:3-8[1], did *138 not apply for the benefit of plaintiffs. Plaintiffs appeal from the concomitant judgment.
Initially, we note that the trial judge made certain findings of fact in connection with his consideration of defendant's motion, made pursuant to R.R. 4:42-2(b), for dismissal. The trial judge was not called upon to make factual findings, but rather, to determine whether, accepting plaintiffs' evidence as true and giving them the benefit of all favorable inferences to be drawn therefrom, reasonable minds could differ as to whether liability had been established. Bell v. Eastern Beef Co., 42 N.J. 126 (1964). We assume that in making his "findings" the trial judge was referring to such inferences as the jury could have drawn from its favorable consideration of plaintiffs' proofs.
The questions presented are: (1) What is the status of a fireman assigned to inspect the fire escape apparatus on premises and what is the degree of care owing to him while on the premises in such capacity? (2) Assuming that his status is that of a business invitee, so that the landowner would be liable to him for ordinary negligence, did the facts call for application of res ipsa loquitur? (3) Wholly aside from any obligation owing to him as a fireman-inspector, may liability be predicated upon the owner's alleged violation of N.J.S.A. 55:3-8, then in effect?
As we read his oral conclusions, the trial judge was of the opinion that plaintiffs occupied the status of firemen engaged in the performance of their general duty of fighting fires, under the rule laid down in Krauth v. Geller, 31 N.J. 270 (1960), and since there was no proof that defendant knew (or was chargeable with knowledge) of the defect which caused plaintiffs' injuries, there had been no breach of duty. We hold that he was in error in so ruling.
It is well settled that as to those risks which are inevitably involved in fire fighting there is no liability on the part of an owner of premises to a fireman injured thereby. Krauth v. Geller, supra; Jackson v. Velveray Corp., 82 N.J. Super. 469 (App. Div. 1964). Thus the risk from smoke, flame *139 and the like, or from the collapse of a floor, ceiling, or wall of a burning building, without more, involves hazards which a fireman must ordinarily anticipate. Jackson v. Velveray Corp., supra, at p. 475. However, a fireman is not deemed as a matter of law to have voluntarily assumed all hidden unknown extrahazardous dangers which would not be reasonably anticipated or foreseen, Campbell v. The Pure Oil Co., 15 N.J. Misc. 723, 727, 194 A. 873 (Sup. Ct. 1937), and liability may be imposed upon a landowner for failure to use an available opportunity to warn of a hidden peril, or negligence with respect to conditions creating undue risks of injury, i.e. risks beyond those inevitably involved (inherent) in fire fighting. Krauth v. Geller, supra, 31 N.J., at p. 274; Jackson v. Velveray Corp., supra, 82 N.J. Super. 476, at pp. 474-476.
We find it unnecessary to determine whether the facts sub judice come within the general rule applicable to firemen or the exception thereto referred to above, because plaintiffs occupied a status somewhat different from that of firemen engaged in fighting a fire. Their legal status was not to be determined by their title but by the nature of the work they were required to perform at defendant's premises. We find their status more closely akin to that of a building inspector or the like. As such they were business invitees to whom the obligation of reasonable care was owing. 65 C.J.S., Negligence, § 63 (109) p. 861 (1966); 38 Am. Jur. § 126, pp. 786-87 (1941). While their presence on the premises did not depend upon the permission or express invitation of the owner, the latter by operating its premises in a manner which called for this service (as a tenement house requiring fire escapes) impliedly invited them there for the purpose of performing their duty of making a safety inspection. They were there for a purpose associated with defendant's business. Restatement (Second), Torts, § 345, comment c at p. 227 (1965). The landowner, by its agent, had knowledge of their presence and was under the duty of exercising reasonable care for their safety. It was liable (with certain exceptions to be *140 referred to) for defects or conditions rendering the premises unsafe of which it knew, or should have known in the exercise of reasonable care. McCormack v. Windsor, 9 N.J. Misc. 543, 154 A. 765 (Sup. Ct. 1931) (involving building inspector); Fred Howland, Inc. v. Morris, 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013 (Sup. Ct. 1940) (building inspector). See also Glassbrook v. Manhi Realty Corp., 279 App. Div. 711, 108 N.Y.S.2d 652 (App. Div. 1951) (census taker); Swift & Co. v. Schuster, 192 F.2d 615 (10 Cir. 1951) (meat inspector); Miller v. Pacific Constructors, 68 Cal. App.2d 529, 157 P.2d 57 (Dist. Ct. App. 1945) (temperature inspector); Jennings v. Industrial Paper Stock Co., 248 S.W.2d 43 (Ct. App. Mo. 1952) (public health inspector); Henryetta Construction Co. v. Harris, 408 P.2d 522 (Okla. Sup. Ct. 1965) (highway paving inspector); Robey v. Keller, 114 F.2d 790 (4 Cir. 1940) (member of building committee).
However, defendant's duty to exercise reasonable care did not encompass an obligation to affirmatively guard against defects in apparatus which plaintiffs were in the process of inspecting pursuant to the duty which brought them to its premises. The need for the services of persons occupying the status of building or safety inspectors is premised upon the possibility that violations of safety or building codes may reasonably be expected to be encountered. It is the possibility of such violations that creates the need for the inspector's services. Thus an employee of a contractor engaged to repair a water tower may not recover for injuries sustained (due to the defective condition of the tower) while engaged in making an inspection of the tower for the purpose of determining what repairs are necessary, Hammond v. City of El Dorado Springs, 362 Mo. 530, 242 S.W.2d 479, 31 A.L.R.2d 1367 (Sup. Ct. 1951); and a contractor employed to level the uneven condition of a sidewalk may not recover for injuries occasioned by his stumbling over one of the very obstacles he was engaged to remove. Likewise, one hired to replace a roof may not recover for injuries from a *141 fall due to the defective condition of the roof he is replacing. Broecker v. Armstrong Cork Co., 128 N.J.L. 3 (E. & A. 1942). We see no reason in logic to distinguish between one who comes upon the premises to make repairs and one who, as here, comes there for the purpose of making an inspection to determine what repairs, if any, may be necessary.
The cited rule does not, of course, preclude a landowner's liability to one coming upon the premises to make an inspection or effect a repair, for injuries which result from a risk separate and distinct from that created by the portion of the premises, or the apparatus which is to be inspected or repaired. McCormack v. Windsor, supra, 9 N.J. Misc., at pp. 543-44 (building inspector hit by ladder dislodged by wind); Farrell v. Diamond Alkali Co., 16 N.J. Super. 163 (App. Div. 1951) (plaintiff, engaged as steam fitter, injured by exposure to chrome dust in plant); Miller v. Pacific Constructors, supra, (plaintiff was at dam to inspect safety of concrete rather than safety of structure which collapsed and injured him). See also Annotation, 31 A.L.R.2d 1375, 1381-85 (1953).
Here there was no direct proof as to what defect caused plaintiffs' injuries. Considering the testimony in the light most favorable to them, the jury could have found that the ladder failed to move because the pulley failed to turn (probably due, according to Bernat, to rust or paint). When Bernat stepped on the ladder and thus added to the weight suspended from the pulley  or thereafter, when the ladder started to move causing the counterweight to be added to the load carried by the pulley  the bracket which held the pulley either broke or became separated from its attachment and both bracket and pulley fell to the ground. It would thus seem clear that, whatever the defect, it involved a portion of the apparatus which plaintiffs in the performance of their duty, were required to inspect for safety. Krauth v. Geller, supra, 31 N.J., at pp. 273-274. The risk of injury from a defect therein was inherent in the job they were performing. See Jackson v. Velveray Corp., supra, 82 N.J. Super., at p. 475. *142 The risk was one assumed, in its primary sense, Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44 (1959), and as to plaintiffs, defendant was under no duty to affirmatively guard against it.
Plaintiffs argue that the facts called for application of res ipsa loquitur and thus precluded granting of the motion. Not so. Assuming that the proofs showed such exclusive control as justified its application (which we do not find), res ipsa loquitur would have done no more than dispense with plaintiffs' obligation of establishing the specific negligence of defendant which brought about the deficiency in the apparatus which caused a portion of it to fall. Since we have determined that there was no duty owing to plaintiffs because of their special position as inspectors of the apperatus, the issue of negligence vis a vis the pulley or bracket was immaterial.
We perceive no merit to the remaining points raised by defendant. We find it unnecessary to determine whether N.J.S.A. 55:3-8 was enacted for the benefit of firemen. Defendant's statutory duty to maintain the fire escape in good repair did not compel a denial of defendant's motion to dismiss. Plaintiffs were not using the fire escape for its usual and normal purpose, i.e., to escape from a burning building or assist others in doing so, but were on the premises for the sole purpose of determining whether the fire escape was in good repair. They assumed the risk that it might not be.
The judgment of the Law Division is accordingly affirmed.
NOTES
[1] Since repealed by N.J.S.A. 55:13A-28(b). As to currently operative statute, see Hotel and Multiple Dwelling Safety Law of 1967, N.J.S.A. 55:13A-1 et seq.