No. 56,630

DONALD L. CALVERT, *Appellant*, v. GARVEY ELEVATORS, INC. a/k/a GARVEY ELEVATORS, INC. — WALLINGFORD DIVISION, a corporation; and CHEVRON CHEMICAL COMPANY, a corporation, *Appellees*.

(694 P.2d 433)

Opinion filed January 26, 1985.

*Frank McMaster*, of McMaster & McMaster, of Wichita, argued the cause, and *D. Lee McMaster* and *M. Duane Coyle*, of the same firm, were with him on the brief for appellant.

*Richard L. Honeyman*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Forrest James Robinson, Jr.*, of the same firm, was with him on the brief for appellee Garvey Elevators, Inc.

*Ron Campbell*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for appellee Chevron Chemical Company.

The opinion of the court was delivered by

LOCKETT, J.: Donald L. Calvert, a fire fighter, filed a petition in Sedgwick County District Court seeking damages for injuries he suffered while responding to the scene of an anhydrous ammonia

leak. Defendants Chevron Chemical Company and Garvey Elevators, Inc. moved for summary judgment, which the district court granted. Calvert appeals.

On August 1, 1980, Calvert, a captain with the Great Bend Fire Department (Department), whose responsibilities included both fire fighting and rescue work, was on duty. The Department received a call asking for assistance with an ammonia leak. The leak occurred at the Garvey Elevator complex in Seward. A hose on a Garvey applicator tank became disengaged while the tank was being filled with anhydrous ammonia from a storage tank owned by Chevron. By virtue of an agreement to provide "mutual aid" assistance to Seward, the Department responded.

Calvert was in charge of the ambulance dispatched to the scene. Calvert, a licensed emergency medical technician, had attended numerous seminars at which the dangers of anhydrous ammonia were explained. Prior to departing to the scene at Seward, Calvert had been provided with special protective equipment. When the Department ambulance arrived at the complex, vapors were surrounding the area around the leak. The fire fighters could see a man down in the area. There was little chance that the individual was alive since he had been in the area of the vapors for a period of 30 to 45 minutes. Calvert and a fellow fire fighter, Shelby Jones, put on Scott Airpacks and protective clothing and proceeded into the "vapor" area to retrieve the downed man.

After retrieving the victim from the vapor area, Calvert removed his mask to get a deep breath. He immediately experienced a strong smell of ammonia. Later Calvert was placed in the ambulance when he became hot and sweaty. Calvert was taken to the Great Bend Hospital and examined by a doctor. He was released from the Emergency Room and returned home, but later was required to check into the hospital and was diagnosed as having suffered a heart attack. The plaintiff filed for and obtained workers' compensation benefits as a result of his injuries on the job.

The district court determined that the Fireman's Rule applied, and that plaintiff was discharging his duties as a professional fire fighter at the time of his injury. Based upon the Fireman's Rule, the defendants were not liable to the plaintiff. In addition, the district court also found that Calvert, as a fire fighter, was a

licensee at the time of the accident and, therefore, defendants owed Calvert only the duty to refrain from willfully and wantonly injuring him.

Since there is no controversy as to the facts in this case, we are limited to considering questions of law. The appeal in the present case involves an issue of first impression in Kansas. The question is whether Kansas should adopt the "Fireman's Rule" which provides that a fire fighter who enters upon the premises of another in the discharge of his duty may not maintain a cause of action against the individual for negligence in creating a risk which necessitated a fire fighter's presence and resulted in injury to the fire fighter. The Fireman's Rule holds that an owner or occupier of land owes no duty to a fire fighter to keep the premises in a reasonably safe condition. The courts have justified this rule on the basis of public policy, that the fire fighter cannot complain of negligence in the creation of the very occasion for his employment. He assumes the risks normally associated with the fire fighting when he enters that employment. We must decide whether Kansas will join the general trend and adopt the Fireman's Rule limiting the liability for negligent acts or wrongful conduct resulting in on-the-job injuries to fire fighters.

The term "Fireman's Rule" is a common-law doctrine and a product of various legal theories resulting in several different rules. Almost all jurisdictions, when confronted with this issue, have adopted some form of the Fireman's Rule. The majority of jurisdictions limit, in one way or another, the extent of a negligent actor's liability to a fire fighter injured while performing his official duties.

Negligence is the theory of recovery most frequently asserted by fire fighters in actions against owners and occupants of premises for injuries received while discharging their duties. Normally it has been held that, apart from active negligence, *i.e.*, the failure to warn of hidden dangers and statutory violations, the owner or occupant of premises owes to a fire fighter either no duty of care to keep the premises safe or only the duty to refrain from inflicting willful or wanton injuries upon him.

A number of jurisdictions take the view that a fire fighter who enters upon the premises in the line of duty has the status of a licensee. Annot., 11 A.L.R. 4th 597 . See also *Price v. Morgan,*

436 So.2d 1116 (Fla. Dist. App. 1983); *Buchanan v. Prickett & Son, Inc.*, 203 Neb. 684, 279 N.W.2d 855 (1979); *Baxley v. Williams Construction Co.*, 98 Ga. App. 662, 106 S.E.2d 799 (1958). As a licensee there is no duty upon the owner or occupant except to refrain from injuring the licensee willfully or wantonly. In Kansas, a licensee is one who enters or remains on the premises of another by virtue of either the express or implied consent of the possessor of the premises, and, therefore, is not a trespasser thereon. The possessor of the premises on which a licensee intrudes owes the licensee the duty to refrain from willfully or wantonly injuring him. *Britt v. Allen County Community Jr. College*, 230 Kan. 502, 638 P.2d 914 (1982).

Other jurisdictions have expressly rejected the licensee concept. Some of the jurisdictions have determined that fire fighters should not be treated as licensees but as invitees. See *Francil v. Q.S.E. Foods, Inc.*, 60 Ill.2d 552, 328 N.E.2d 538 (1975); *Walsh, et. al. v. Madison Park Properties, Ltd.*, 102 N.J. Super. 134, 245 A.2d 512 (1968). An invitee is one who enters or remains on the premises for the benefit of the inviter, or for the mutual benefit and advantage of both the inviter and invitee. The possessor of the premises on which an invitee enters owes a higher degree of care to the invitee, that of reasonable or ordinary care for the invitee's safety. A possessor has the duty to protect and warn an invitee of a danger that may be reasonably anticipated.

Other jurisdictions take the view that a fire fighter entering upon premises in the discharge of his duties is not classified either as a licensee or invitee but occupies the status of *sui generis*. See *Krauth v. Israel Geller and Buckingham Homes, Inc.*, 31 N.J. 270, 157 A.2d 129 (1960) (Krauth); *Beedenbender v. Midtown Properties*, 4 App. Div. 2d 276, 164 N.Y.S.2d 276 (1957). When classified as *sui generis*, one of that class is privileged to enter the land for a public purpose, irrespective of consent. The occupier of the premises owes a similar duty to one so classified as that which is owed to an invitee.

A number of courts have used an assumption of the risk analysis in determining that a fire fighter who is injured in the performance of his duty cannot sue a third party whose negligence created the condition resulting in the injuries. See *Baker v. Superior Court*, 129 Cal. App. 3d 710, 181 Cal. Rptr. 311 (1982); *Krauth*, 31 N.J. 270. The Fireman's Rule is not based

upon "express" assumption of the risk, *i.e.*, where parties contract with each other so that one accepts the risk of harm which is instant to the other's conduct, but rather upon "implied" assumption of the risk.

Assumption of the risk doctrine is divided into "primary" and "secondary" assumption of the risk. Primary assumption of the risk technically is not a defense, but rather a legal theory which relieves an individual of a duty which he might otherwise owe another with respect to a particular risk. Secondary assumption of the risk occurs when the individual voluntarily encounters a known, appreciated risk without an intended manifestation by that individual that he consents to relieve another of his duty. Primary assumption of risk, therefore, is a doctrine which limits the duty owed by the occupier of the premises to the fire fighter. The primary assumption of risk doctrine is an absolute bar to a fire fighter's recovery; it dictates that the occupier of the premises did not owe the individual fireman any duty of care. The Minnesota Supreme Court has made a comprehensive analysis of this theory in *Armstrong v. Mailand*, 284 N.W.2d 343 (Minn. 1979).

Kansas has not considered the Fireman's Rule and the relationship of the doctrine of assumption of risk. *Jackson v. City of Kansas City*, 235 Kan. 278, 680 P.2d 877 (1984), considered, as one of the issues on appeal, the question of whether fire fighters by their employment had assumed the risk of being injured while riding upon the fire truck. We determined that the doctrine of assumption of risk was still viable in Kansas although its application is limited to cases where a master/servant relationship is involved. *Jackson* reaffirmed the viability of the doctrine of assumption of risk in employment situations. We determined that a collision between fire trucks was not a usual risk of a fire fighter's employment. *Jackson* is distinguishable from the present case in that there it was the city as employer who was negligent, not a third party.

To use assumption of the risk as a basis for adopting the Fireman's Rule in Kansas, it would be necessary to base it on secondary assumption of risk where a master/servant relationship is involved. We would be required to adopt the legal theory that an individual taxpayer, as occupant of the premises, is the

employer of the fire fighter employee. We do not believe that assumption of the risk can be carried to that extent.

Still other jurisdictions have determined that a fire fighter is a public safety officer, and that a public safety officer, by accepting salary and fringe benefits, assumes the risk normal to the employment. See *Walters v. Sloan,* 20 Cal. 3d 199, 142 Cal. Rptr. 152, 571 P.2d 609 (1977). Fire fighters are paid for the work they perform, including preparation for facing the hazards of their profession and dealing with the perils which arise. When injury occurs, those states claim that liberal compensation is provided. Medical and disability benefits ordinarily are provided to fire fighters under workers' compensation acts. In some instances fire fighters are provided special benefits under public employees retirement systems.

In Kansas, under K.S.A. 44-505d, the Firemen's Relief Association must conduct an election among members to determine whether such members will·be excepted from the provisions of the Workmen's Compensation Act. A Firemen's Relief Fund is provided for in K.S.A. 40-1701 *et seq.* Under K.S.A. 40-1707, monies collected under the Act are used for relief of any member of a fire department, "injured or physically disabled in or by reason of the discharge of such member's duties as a fireman" and "for the payment of a death benefit when any member of such fire department is killed in the discharge of such member's duties as a fireman, or who dies from the effect of injuries so received or from disease contracted by reason of such member's duties as a fireman." The statute also provides that the funds may be used to establish annuities for volunteer fire fighters or to purchase life insurance for both paid and volunteer fire fighters.

Where the Fireman's Rule is based upon the rationale of the fire fighter being a public safety officer, it is determined that the public policy is to spread the risk and cost to the public as a whole to protect and compensate fire fighters when they are injured while performing their duties.

Finally, other jurisdictions have found it is "public policy" that determines a fire fighter cannot recover for injuries caused by the very situation that initially required his presence in an official capacity and subjected him to harm. Public policy precludes recovery against an individual whose negligence created the very need for the presence of the fire fighter at the scene in his professional capacity. See *Walters v. Sloan,* 20 Cal. 3d 199,

142 Ca. Rptr. 152, 571 P.2d 609 (1977); *Grable v. Varela,* 115 Ariz. 222, 564 P.2d 911 (App. 1977); *Washington v. Atlantic Richfield Co.,* 66 Ill. 2d 103, 5 Ill. Dec. 143, 361 N.E.2d 282 (1976); *Romedy v. Johnston,* 193 So. 2d 487 (Fla. Dist. App. 1967); *Clark v. Corby,* 75 Wis. 2d 292, 249 N.W.2d 567 (1977); *Buren v. Midwest Industries, Inc.,* 380 S.W.2d 96 (Ky. 1964)..

Fire fighters enter on the premises to discharge their duties. Fire fighters are present upon the premises, not because of any private duty owed the occupant, but because of the duty owed to the public as a whole. In populous areas fire fighters are first concerned with keeping a fire confined and preventing it from spreading to other structures, and then with the preservation of the burning property.

We now hold that it is a public policy of the State of Kansas that a fire fighter cannot recover for injuries caused by the very wrong that initially required his presence in an official capacity and subjected the fire fighter to harm; that public policy precludes recovery against an individual whose negligence created a need for the presence of the fire fighter at the scene in his professional capacity.

It is not the public policy to bar a fire fighter from recovery for negligence or intentional acts of misconduct by a third party, nor is the fire fighter barred from recovery if the individual responsible for the fire fighter's presence engages in subsequent acts of negligence or misconduct upon the arrival of the fire fighter at the scene. Public policy would not bar a fire fighter from recovery if an individual fails to warn of known, hidden dangers on his premises or for misrepresenting the nature of the hazard where such misconduct causes the injury to the fire fighter. A fire fighter only assumes hazards which are known and can be reasonably anticipated at the site of the fire and are a part of fire fighting.

Calvert argues that the Fireman's Rule should not apply here because an ultra-hazardous material, anhydrous ammonia, was involved. We do not agree. Calvert's injuries arose out of or as a result of the original act which allowed the gas to escape from the tank. One of the purposes of Calvert's employment as a fire fighter was to protect the public in situations where poisonous gas escapes. Calvert knew from his training that anhydrous ammonia was dangerous and was provided with special protec-

tive equipment for use in the poisonous environment. When summoned, Calvert had been warned of the danger as it existed and there had been no misrepresentation as to the nature of the hazard.

We agree with the district court that the Fireman's Rule should be adopted in Kansas as part of the public policy; that Calvert was discharging his duties as a professional fire fighter at the time of his injury; and, based upon the Fireman's Rule, the defendants were not liable to Calvert. We disagree with the district court when, in addition, it found that the plaintiff was a licensee at the time of the accident, and, therefore, the defendants owed the plaintiff only the duty to refrain from willful and wanton conduct towards him. The Fireman's Rule in Kansas is not to be based upon "premises law," or categorizing fire fighters as mere licensees when performing their duties, but upon public policy.

The district court is affirmed as modified.

PRAGER, J., concurs in the result.