No. 83,619

MICHAEL W. MCKERNAN, individually, and for the benefit of his wife, ANNETTE D. MCKERNAN, *Plaintiff*, v. GENERAL MOTORS CORPORATION, *Defendant*.

(3 P.3d 1261)

Opinion filed April 21, 2000.

*Chan P. Townsley*, of Hutton & Hutton, of Wichita, argued the cause and was on the briefs for plaintiff.

*David C. Stout*, of Chionuma and Associates, P.C., of Kansas City, Missouri, argued the cause, and *Chuck N. Chionuma*, of the same firm, was with him on the brief for defendant.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff, a firefighter, filed a products liability suit in the United States District Court against the manufacturer of an automobile, alleging negligence and strict liability claims for an injury that occurred when the automobile's right hood strut exploded and injured the firefighter as he attempted to extinguish a car fire. The action is before the United States District Court for the District of Kansas on the manufacturer's motion for summary judgment. The manufacturer claims the firefighter's claims are barred by the Firefighter's Rule, as adopted in Kansas in *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 694 P.2d 433 (1985). The United States District Court pursuant to K.S.A. 60-3201 certified two questions for determination by this court:

1. Does the Kansas Firefighter's Rule bar a firefighter's products liability claims against a defendant whose product exploded during the course of a car fire, but which was not the cause of the fire, injuring the firefighter?
2. Must the hazard or danger that caused injury be an anticipated, normal, or otherwise foreseeable risk of firefighting to justify application of the Firefighter's Rule?

Michael W. McKernan has been employed as a firefighter for the Wichita Fire Department since March 1982. On January 17, 1995, his fire engine was dispatched to a car fire in Wichita, Kansas. Upon arrival, McKernan found a 1993 Oldsmobile Achieva automobile with gasoline and rear tires burning. There were no visible flames around the car's engine compartment when McKernan arrived.

Following fire department procedures, McKernan first circled the car to determine whether there were any injured persons in the area and to identify hazards. To eliminate any further ignition source, he attempted to open the hood of the car and disconnect the battery. McKernan was unable to open the hood. As he stepped back from the car, a right hood gas strut exploded, firing the strut

rod through the right headlight of the car piercing McKernan's left hand and striking him in the abdomen with sufficient force to penetrate his Kevlar firefighter's jacket and cause bruising. The rod was later surgically removed from his left hand.

The gas strut that injured McKernan was one of two struts attached to the car's hood to hold the hood open when raised. The other strut later exploded during the fire. After it exploded, firefighters heard it pass through trees but were unable to locate it. An investigation determined that the car had been stolen and set afire with a flammable liquid.

There are approximately 500 car fires reported each year in Wichita, Kansas. McKernan has responded to approximately 50 car fires throughout his career with the Wichita Fire Department. The fire department provides training and training materials that identify potential hazards during car fires and discuss how the hazards should be handled. As a result of McKernan's training and experience, he knew that automobile tires, gas tanks, air bags, air conditioner evaporators, hollow drive shafts, and low impact bumpers can explode during car fires.

McKernan was aware and had been trained as to the potential explosion of gas-filled hatchback struts during car fires. However, the department training officers were unaware of the placement of gas struts under the hoods of vehicles prior to McKernan's injury. In addition, no instructors, safety training class, or manual available to Wichita firefighters identified the use of gas-filled struts as hood lifts or warned of specific dangers from that use.

McKernan filed this suit, alleging various negligence and strict liability claims against General Motors Corporation based on the Oldsmobile Achieva's hood struts. McKernan's wife sued as well for her derivative losses. For ease of analysis in the opinion, we shall refer only to the firefighter's claim and McKernan as the plaintiff. McKernan asserts General Motors was negligent in designing, manufacturing, or distributing automobiles with gas hood struts and in failing to warn of the risk of exploding struts. In addition, McKernan claims General Motors is strictly liable for his injuries because General Motors manufactured the Achieva with latent and hidden defects and failed to warn of those defects. Gen-

eral Motors seeks summary judgment on the entirety of Mc-Kernan's claims based on the Firefighter's Rule, adopted by the Kansas Supreme Court in *Calvert*.

*Does the Kansas Firefighter's Rule bar a firefighter's products liability claims against a defendant whose product exploded during the course of a car fire, but which was not the cause of the fire, injuring the firefighter?*

The Firefighter's Rule, as adopted in Kansas, provides that a firefighter who enters upon the premises of another in the discharge of his duty may not maintain a cause of action against the individual whose negligence created the risk which necessitated the firefighter's presence and resulted in injury to the firefighter. *Calvert*, 236 Kan. at 572. McKernan contends that the Kansas Firefighter's Rule does not bar his suit against General Motors because General Motors' negligence did not create the risk, *i.e.*, the burning automobile, which necessitated his presence at the fire. General Motors asserts that the Firefighter's Rule applies and bars McKernan's damage claims because McKernan was at the scene of the car fire in his official capacity as a firefighter and was injured by the wrong (*i.e.*, car fire) that required his presence.

*Calvert* is the only published Kansas case where the Firefighter's Rule has been applied. *Calvert* concerned a firefighter, also trained to assist medical emergencies, who was injured while responding to a call for assistance due to an ammonia leak at a grain elevator complex. The firefighter inhaled ammonia at the scene and later suffered a heart attack as a result. The firefighter filed suit against the owners of the elevator where the ammonia leak occurred, seeking damages for injuries he suffered while responding to the scene of the leak. The district court granted summary judgment for the defendants, and the firefighter appealed.

The *Calvert* court reviewed the theories upon which the Firefighter's Rule is premised in other jurisdictions, such as premises liability, assumption of risk, and public policy. The *Calvert* court first rejected premises liability as a basis for the rule, finding that premises liability law was inadequate to create a duty owed by landowners to firefighters because firefighters are not true licensees in

that landowners have no authority to consent to or forbid the firefighter from entering the land in fulfillment of his or her duties. Assumption of risk was also rejected by the *Calvert* court because application of that doctrine requires a master/servant relationship, with the master being the individual taxpayer and the servant being the firefighter. The court was not willing to extend the doctrine of assumption of risk to that extent. 236 Kan. at 575. After rejecting those theories the *Calvert* court held that Kansas public policy was the basis for the Firefighter's Rule, stating:

"[I]t is a public policy of the State of Kansas that a firefighter cannot recover for injuries caused by the very wrong that initially required his presence in an official capacity and subjected the firefighter to harm; that public policy precludes recovery against an individual whose negligence created a need for the presence of the firefighter at the scene in his professional capacity." 236 Kan. at 576.

The *Calvert* court adopted the Firefighter's Rule and held that because the ammonia leak was a known danger, the Rule was a defense to the firefighter's cause of action against the owners of the elevator. 236 Kan. at 577.

*Calvert* clearly established that in Kansas, the Firefighter's Rule is a defense for owners and occupiers of land whose negligence caused the fire which resulted in injury to the firefighter. Narrowly construed, the rule would not preclude McKernan's products liability suit because McKernan's suit is not against an owner or occupier whose negligence was the cause of the fire that caused McKernan's injury.

We note that dictum in *Calvert* suggests that the Firefighter's Rule does not bar a plaintiff's products liability claims. See 236 Kan. at 576 ("It is not the public policy to bar a firefighter from recovery for negligence . . . by a third party."). However, the *Calvert* case did not expressly discuss a third-party products liability claim; therefore, the public policy articulated as the basis for the Firefighter's Rule must be weighed against the public policy supporting products liability claims to determine whether the rule bars recovery in a products liability case.

Both parties discuss cases from other jurisdictions to support their respective positions. See *White v. Edmond,* 971 F.2d 681 (11th Cir. 1992); *Orth v. Cole,* 191 Ariz. 291, 955 P.2d 47 (Ct. App.

1998); *Wright v. Stang Manufacturing Co.*, 54 Cal. App. 4th 1218, 63 Cal. Rptr. 2d 422 (1997); *Rennenger v. Pacesetter Co.*, 558 N.W.2d 419 (Iowa 1997); *Paul v. Luigi's, Inc.*, 557 N.W.2d 895 (Iowa 1997); *Flowers v. Rock Creek Terrace*, 308 Md. 432, 520 A.2d 361 (1987); *Kreski v. Modern Electric*, 429 Mich. 347, 415 N.W.2d 178 (1987); *Armstrong v. Mailand*, 284 N.W.2d 343 (Minn. 1979); *Mahoney v. Carus Chemical Co., Inc.*, 102 N.J. 564, 582, 510 A.2d 4 (1986); *Austin v. City of Buffalo*, 179 App. Div. 2d 1075, 580 N.Y.S.2d 604 (1992); *Peerless Ins. Co. v. Nault*, 701 A.2d 320 (R.I. 1997); *Mignone v. Fieldcrest Mills*, 556 A.2d 35 (R.I. 1989).

The cases cited lack relevance to this case because the Firefighter's Rule in those jurisdictions is premised on assumption of risk, premises liability, or a combination of one of those rationales and public policy, or a defective product caused the fire.

The parties discuss two cases that, like the case before us, are products liability cases where the defective product did not cause the fire and were decided in jurisdictions where the Firefighter's Rule has been adopted on the basis of public policy: *Court v. Grzelinski*, 72 Ill. 2d 141, 379 N.E.2d 281 (1978), and *Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 467 N.W.2d 508 (1991).

In *Grzelinski*, the firefighter brought suit to recover for injuries sustained while fighting a car fire. The complaint alleged negligence against the owner of the car in keeping containers of a highly flammable substance hidden from view in the vehicle and charged General Motors with strict liability arising out of the explosion of the vehicle's gasoline tank. General Motors contended that firefighters are a special class of individuals to whom no duty is owed, even if injury to those individuals may be reasonably foreseen, because risk of harm resulting from fire is inherent in the occupation for which firefighters are trained and paid.

Regarding the strict liability claim, the court first determined whether a firefighter can recover in products liability for injuries incurred while fighting a fire in the course of his or her employment. The Illinois court analyzed the case in terms of duty. The court noted that in products liability, individuals to whom injury from a defective product may reasonably be foreseen include not

only those within classes of users and consumers but may include persons outside those purchasing the product. 72 Ill. 2d at 146.

The *Grzelinski* court then reviewed the history of the Firefighter's Rule and the rationales underlying the rule in various jurisdictions. Regarding duty of care as a basis for the Firefighter's Rule, the court observed that numerous appellate courts impose a duty of reasonable care on landowners or occupiers to prevent injury to firefighters which might result from a cause independent of the fire, but those courts impose no duty to prevent injury resulting from the fire itself. The court stated:

"This distinction evolved for two mutually supportive reasons. First, since most fires occur because of the negligence of the landowner or occupier, it is believed that the imposition of a duty to prevent fires from occurring or spreading on a person's premises would place an unreasonable burden upon the person who owned or occupied improved land. [Citations omitted.] This public policy consideration, however, tended to undermine the general duty imposed upon landowners or occupiers to exercise reasonable care to keep their premises safe. A compromise was reached with regard to firemen, recognizing that the risk of harm from fire is inherent in a fireman's occupation. This compromise was believed to provide a necessary social balance between the absolute possessory control of land and the duty of reasonable care to firemen whose public responsibility summons them to the premises. As is apparent, this version of the 'fireman's rule' rests not merely upon a recognition that certain risks are normally expected in fire fighting, but upon a policy consideration limiting the duty of landowners or occupiers." 72 Ill. 2d at 148.

The *Grzelinski* court, therefore, limited the Firefighter's Rule to landowner/occupier liability, stating:

"The rule cannot be expanded to a free-floating proposition that a fireman cannot recover for injuries resulting from risks inherently involved in fire fighting. To do so would be tantamount to imposing the doctrine of assumption of risk onto the occupation of fire fighting and would be directly contrary to the limited concept of assumption of risk in Illinois." 72 Ill. 2d at 148-49.

As the Kansas court did in *Calvert*, the Illinois court stated that in negligence actions, assumption of risk is confined to those situations involving persons who have a contractual or employment relationship with the defendant. See 72 Ill. 2d at 149. The *Grzelinski* court further stated: "In products liability actions such as this, assumption of risk is a bar to recovery only if the plaintiff is aware

of the product defect and voluntarily proceeds in disregard of the known danger." 72 Ill. 2d at 149.

Finally, the *Grzelinski* court weighed the public policy underlying products liability law against the policy considerations in favor of the Firefighter's Rule and concluded:

"Moreover, the limitation on the duty of landowners or occupiers with respect to fires occurring on their premises has no application in a products liability action. Mr. Justice Traynor, in his renowned concurrence which presaged the acceptance of the doctrine of products liability, stated that 'public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market.' [Citations omitted.] In furtherance of this public policy, a legal duty is imposed upon those responsible for creating a defective product in favor of any person to whom injury from the product may reasonably be foreseen. It would serve no societal interest to limit this duty by carving out of the class of such persons a subclass of firemen to assume the undue risks of injury inherent in defective products. We therefore hold that, to the extent a fireman is a person to whom injury from the product may reasonably be foreseen, he may recover in products liability, even though his injury was incurred while fighting a fire in the course of his employment. In so holding, we reject the opportunity to extend the 'fireman's rule' beyond its limited context of landowner/occupier liability." 72 Ill. 2d at 150-51.

The Wisconsin Supreme Court reached the same conclusion in *Hauboldt*. In that case, the firefighter was injured when an acetylene tank manufactured by Union Carbide exploded during a fire. The court found that none of the policy reasons for the Firefighter's Rule would be served by extending the rule to preclude products liability actions, noting:

"The rationale behind [limiting homeowner liability] is that since a large proportion of fires are started by the negligence of the landowner or occupier, it would be unreasonable to make the landowner or occupier respond in damages to the firefighter who is employed and trained for the purpose of fighting such fires. This rationale does not apply to manufacturers of defective products which directly injure firefighters who are not prepared for the danger the defective product presents. Imposing liability where a product, because of a defectively designed or manufactured safety device, explodes in a fire and injures a firefighter is no different from imposing liability for injuries caused by other defective products. The burden on the manufacturer is the same." 160 Wis. 2d at 675-76.

Union Carbide argued that to allow recovery against manufacturers would permit the law of negligence to " 'enter a field that

has no sensible or just stopping point.' " 160 Wis. 2d at 676 (quoting *Hass v. Chicago & N.W. Ry.*, 48 Wis. 2d 321, 327, 179 N.W. 2d 885 [1970]). Union Carbide contended that allowing recovery would predicate immunity from liability on fortuitous circumstances such as whether the product manufacturer owns the property where the accident occurs. The court disagreed, stating:

"On the contrary, holding Union Carbide liable under these circumstances (where Union Carbide is not the landowner and its defective product directly causes the injury) actually preserves the sensible and just stopping point we have established through our earlier cases. Allowing Union Carbide to be protected by the firefighter's rule in this situation would open the door to expansive immunity from liability for manufacturers whose defective products injure firefighters while they fight a fire in the vicinity of the product, unaware of the danger posed by the defective product. This was not the intent of the firefighter's rule." 160 Wis. 2d at 676.

The *Hauboldt* court then found that other policies are also not served by extending the Firefighter's Rule to products liability cases, stating:

"While 'fundamental concepts of justice prohibit a firefighter from complaining about the negligence that creates the very need for his or her employment,' *Mignone*, 556 A.2d at 39, such is not the case here: Had Hauboldt sued the manufacturer of the woodburning furnace which started the fire, alleging that the stove was defective, the facts of this case would be similar to those in *Mignone* (where a faulty electric blanket started the fire). In this case, the acetylene tank did not start the fire, but rather exploded during the fire as a result of defective safety devices, directly injuring Hauboldt. The defective product in this case did not 'create the very need for his [employment].'

"The *Mignone* court also stated that since the citizens had already been taxed once in order to compensate firefighters for their injuries, it would be fundamentally inconsistent with public policy to require an individual to compensate the firefighter a second time in tort for those same injuries. *Id.* While this policy reason can arguably apply to Union Carbide as a taxpayer, it is not as persuasive. Firefighters are hired to fight fires, not to confront defective acetylene tanks. Just as a landowner is liable for negligence unrelated to 'starting or failing to curtail the spread of a fire,' see *Wright*, 148 Wis. 2d at 907, the fact that Union Carbide is a taxpayer should not limit its liability in this instance.

"On the contrary, the policy to be promoted by strict liability is the protection of otherwise defenseless victims of defectively manufactured products. [Citation omitted.] The purpose of strict products liability is to ensure that the costs of injuries resulting from the use of a defective product are borne by the manufacturer who placed the defective product on the market, rather than by the injured

person. *Fish*, 126 Wis. 2d at 304. See also *Court v. Grzelinski*, 72 Ill. 2d 141, 379 N.E.2d 281, 285 (1978) ('[P]ublic policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market.'). As in products liability cases generally, Union Carbide is in the best position to identify and correct defects in its manufactured products. Rather than furthering these policy goals, providing immunity to Union Carbide under these circumstances would frustrate these goals." 160 Wis. 2d at 676-77.

The Wisconsin court refused to expand the Firefighter's Rule to preclude suit against Union Carbide because the danger caused by the defective product was not reasonably apparent to the firefighters or was a risk unanticipated by them. The court reasoned:

"[T]he firefighter was in the same position as any other individual injured by a defective product. It is not logical to expand the firefighter's rule to immunize product manufacturers simply because the defective product happens to injure a firefighter in the course of a fire, where the danger caused by the defective product is not reasonably apparent to the firefighter, or anticipated by the firefighter." 160 Wis. 2d at 674.

The resolution of the question of whether the Kansas Firefighter's Rule bars products liability claims against persons other than the person whose negligence occasioned the firefighter's presence requires a weighing of competing public policies. As stated in *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 576, 694 P.2d 433 (1985), the public policy of Kansas precludes recovery against an individual whose negligence created a need for the presence of the firefighter at the scene in his professional capacity. The rationale behind limiting landowner or occupier liability is that since a large proportion of fires are started by the negligence of the landowner or occupier, it would be unreasonable to make that person respond in damages to the firefighter who is employed and trained for the purpose of fighting such fires. On the other hand, a strong public policy recognized in strict liability law is that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. See *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 866, 90 L. Ed. 2d 865, 106 S. Ct. 2295 (1986).

Allowing products liability claims against parties whose negligence did not create the need for the firefighter at the scene does

not frustrate the public policy basis of the Firefighter's Rule as it was adopted in Kansas, but rather promotes the public policy of fixing responsibility for defective products on the party who introduces the product to the market place. The Kansas Firefighter's Rule does not bar a products liability claim against a party whose negligence did not create the need for the firefighter at the scene.

*Must the hazard or danger that caused injury be an anticipated, normal, or otherwise foreseeable risk of firefighting to justify application of the Firefighter's Rule?*

General Motors argues that even if this court holds that products liability suits are not barred as a matter of law by the Firefighter's Rule, the Firefighter's Rule precludes recovery because the injury sustained by McKernan was a reasonably anticipated risk of firefighting. It asserts that the factfinder may find that an exploding hood strut was foreseeable and, therefore, a known anticipated risk of firefighting.

In *Calvert*, this court stated:

"It is not the public policy to bar a firefighter from recovery for negligence or intentional acts of misconduct by a third party, nor is the firefighter barred from recovery if the individual responsible for the firefighter's presence engages in subsequent acts of negligence or misconduct upon the arrival of the firefighter at the scene. Public policy would not bar a firefighter from recovery if an individual fails to warn of known, hidden dangers on his premises or for misrepresenting the nature of the hazard where such misconduct causes the injury to the firefighter. *A firefighter only assumes hazards which are known and can be reasonably anticipated at the site of the fire and are a part of firefighting.*" (Emphasis added.) 236 Kan. at 576.

In context, the statement in *Calvert* regarding reasonably anticipated risks is articulated as the basis for finding that the Firefighter's Rule would not bar a firefighter from recovery from an owner or occupier if the owner or occupier failed to warn of known hidden dangers. The statement does not adopt an assumption of risk rationale as the basis for the Firefighter's Rule because the assumption of risk doctrine is applicable only in master/servant relationships. In a products liability action such as this, public policy bars recovery if the firefighter is aware of the product defect and voluntarily proceeds in disregard of the known danger. It is

for the factfinder to determine whether the hood struts in this case were unknown defective products not anticipated by the firefighter. If so, under the facts stated, the Firefighter's Rule should not preclude recovery for the firefighter's damages.

SIX, J., concurring and dissenting: I concur in the first question result, the answer is "no." The Firefighter's Rule applies to products liability claims but only if the product was the cause of the fire.

I differ on the discussion of the second question. The second question is: "Must the hazard or danger that caused injury be an anticipated, normal, or otherwise foreseeable risk of firefighting to justify application of the Firefighter's Rule?" I read the majority to apply the public policy barring recovery only if the "firefighter is aware of the product defect and voluntarily proceeds in disregard of the known danger." My disagreement rests on language in *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 694 P.2d 433 (1985), that the majority appears to limit here. I refer to: "A firefighter only assumes hazards which are known and can be reasonably anticipated at the site of the fire and are a part of firefighting." 236 Kan. at 576.

Based on *Calvert*'s public policy rationale, we are applying the Firefighter's Rule to products liability cases if the product was the cause of the fire injuring the firefighter. I glean from *Calvert*'s teaching that a firefighter is also barred from recovery if the hazard or danger causing the injury could reasonably be anticipated at the site of the fire. Was the risk to McKernan that the gas-filled hood strut would explode in the car fire a reasonably anticipated hazard that was a part of firefighting? If a "yes" answer either survives summary judgment, or is supplied by the factfinder at a later stage of the trial, the Firefighter's Rule applies.