**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHESTER W. PEAK, by and through his
guardian and next friend, Gina Peak;
DONALD "REX" LOWE; JUSTIN D.
GIBSON; JUSTIN T. EHM; DANIEL A.
JOHNSON; NATHAN W. ROTH; CITY
OF KIRWIN, KANSAS,

        Plaintiffs - Appellants,

v.

CENTRAL TANK COATINGS, INC.,

        Defendant - Appellee.

No. 14-3157
(D.C. No. 6:12-CV-01251-JAR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

A number of volunteer firefighters for the City of Kirwin, Kansas, and the City

sought damages for personal injuries and property damages suffered in an explosion

at the City's water tower. The explosion occurred while Central Tank Coatings was

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

repairing the tower. The district court concluded plaintiffs' claims were barred by the so-called Fireman's Rule as adopted by the Kansas Supreme Court in *Calvert v. Garvey Elevators, Inc.*, 694 P.2d 433, 438-39 (Kan. 1985). Under the Rule, a firefighter cannot recover damages for injuries from known hazards or those that can be reasonably anticipated at the site of a fire and are part of firefighting.

We affirm. We conclude the Kansas Supreme Court would apply the Fireman's Rule to the circumstances here, where plaintiffs could have reasonably anticipated the explosion.

## BACKGROUND

The City hired Central Tank to repair and repaint its water tower. In July 2010, Central Tank's crew arrived at the site with an open deck tractor trailer. A large, unmarked metal container box was mounted to the wood deck of the trailer. It was used by the crew to store various tools, oxygen/acetylene tanks, and other materials, including paint thinner. On the day of the fire, the crew performed work on the roof of the tower between 1:00 p.m. through 3:00 p.m. Starting at about 3:00 p.m., the crew worked on the ground welding new pieces for the roof. There was no smoke or other signs of a fire when the crew left the site at about 5:00 p.m.

Shortly before 7:00 p.m., two witnesses saw smoke coming from the roof of the tower. They called for emergency assistance and the City's volunteer fire department (including plaintiffs who were trained and experienced firefighters) was

dispatched to the site.  The firefighters observed that the rear tires of the tractor trailer were on fire and they focused their efforts on extinguishing the tire fire.

Some, but not all, of the firefighters noticed a stack of large containers of paint thinner, with a bright orange label that stated in large type "FLAMMABLE LIQUID" some fifteen feet from the rear of the tractor trailer.  Aplt. App. Vol. 1 at 224.  Others, including Firemen Lowe and Johnson, had a discussion with Chief Roth about the container box, which was padlocked.  Lowe explained that they should not cut off the lock because either the interior could be on fire or oxygen might enter and ignite something.  Chief Roth observed green and red hoses in the area of the tractor trailer and assumed they were connected to oxygen/acetylene tanks inside the box.  Fireman Ehm, who also saw the hoses, talked with Chief Roth about the hoses and the potential for an explosion.  In fact, Ehm stated that if he had seen the hoses prior to extinguishing the tire fire, he would have backed off and allowed the fire to burn itself out.  Firemen Gibson and Johnson did not recall seeing either the hoses or warning labels on the containers of paint thinner.

The presence of the paint thinner and hoses prompted Fireman Stones (not a party to the suit) to call Central Tank's workmen about the container box; however, he did not reach anyone.  Chief Roth instructed the firefighters to back away from the tractor trailer.  During the retreat, the box exploded.

According to plaintiffs, Fireman Peak was too far away from Chief Roth to hear the instructions to retreat.  He "sustained life-altering . . . injur[ies] . . .

including traumatic brain injury [that] will require around-the-clock care and supervision for the rest of his life. . . . [Fireman] Lowe sustained a severe laceration from the concussion of the blast[] [and] [s]everal plaintiffs sustained life-long hearing loss." Aplt. Opening Br. at 4-5.

An investigation by the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) revealed that "the fire originated under the metal roof of the water tower within the wood substructure where a cutting operation [by Central Tank] had been ongoing prior to [the] fire." Aplt. App. Vol. 2 at 497. The "fire was caused by an open flame and/or sparks coming into contact with the wood substructure for a sufficient period of time that allowed the wood to be brought to its ignition temperature." *Id*. The Kansas State Fire Marshall explained that eventually, "wood members burned and fell to the ground, igniting combustibles and eventually the [rear] trailer tires." *Id*. at 516. The ATF noted "[t]he wood decking over the rear half of the trailer exhibited very heavy direct flame impingement damage . . . [with] burn through of the wood decking in several locations which coincided with the location of the tires that were observed burning by several witnesses." *Id*. at 496. The agencies concluded the paint thinner inside the container box likely provided the fuel for the explosion.

All parties moved for summary judgment. Central Tank's motion was based on its affirmative defense that the suit was barred by the Fireman's Rule. The plaintiffs argued that their claims fell within an exception to the Rule that allows

claims where injuries result from unknown, hidden dangers. The district court concluded that the undisputed, material facts established that the exception did not apply and granted summary judgment in favor of Central Tank. The court found "the labels on the paint thinner cans . . . warned that there were flammable materials on site. Indeed, [Chief] Roth stated that the combination of the paint thinner with warning labels and torch hoses with potentially explosive contents, prompted [Firefighter] Stones to call [Central Tank's] workmen." *Id*. at 816. And "[a]lthough Stones was unsuccessful in reaching the workmen before the explosion occurred, Roth and other Firefighters were concerned enough about the contents of the container box to discuss their concerns with each other and eventually follow Roth's direction to retreat." *Id*.

## STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where . . . a defendant moves for summary judgment to test an affirmative defense, the defendant must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Helm*, 656 F.3d at 1284 (brackets, ellipsis, internal quotation marks omitted). "Once the defendant makes this initial showing, the plaintiff must then demonstrate with

specificity the existence of a disputed material fact. If the plaintiff cannot meet this burden, the affirmative defense bars [the] claim and the defendant is then entitled to summary judgment as a matter of law." *Id*. (internal quotation marks omitted). "In determining whether summary judgment is proper, we view the evidence in the light most favorable to the non-moving party." *Id*.

## ANALYSIS

This is a diversity case governed by Kansas law. *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1167 (10th Cir. 2007). Our "task is not to reach [our] own judgment regarding the substance of the common law, but simply to ascertain and apply the state law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (internal quotation marks omitted). In doing so, we "must follow the most recent decisions of the state's highest court." *Id*. at 665-66. "Where no controlling state decision exists, [we] must attempt to predict what the state's highest court would do." *Id*. at 666 (internal quotation marks omitted). Under such circumstances, it is appropriate for us to look to "appellate decisions in other states with similar legal principles." *Id*.

Following the lead of other appellate courts that had adopted the Fireman's Rule on the grounds of public policy, the Kansas Supreme Court held:

> [I]t is a public policy of the State of Kansas that a fire fighter cannot recover for injuries caused by the very wrong that initially required his presence in an official capacity and subjected the fire fighter to harm; that public policy precludes recovery against an individual whose negligence created a need for the presence of the fire fighter at the scene in his professional capacity.

*Calvert*, 694 P.2d at 438.[1]

One of the decisions relied upon by the *Calvert* court was *Clark v. Corby*, 249 N.W.2d 567 (Wis. 1977). *Clark*, in turn, followed the Fireman's Rule as adopted on public policy grounds in *Hass v. Chicago & North Western Railway*, 179 N.W.2d 885, 888 (Wis. 1970). Significantly, the *Clark* court also carved out an exception to the Rule: "[T]here is in Wisconsin a duty on the part of a property owner or occupier to warn a fire fighter of hidden hazards known to the owner but not known to the fireman." 249 N.W.2d at 570. The *Calvert* court not only adopted the Rule on public policy grounds, but also adopted the "hidden hazard" exception:

> Public policy would not bar a fire fighter from recovery if an individual fails to warn of known, hidden dangers on his premises or for misrepresenting the nature of the hazard where such misconduct causes the injury to the fire fighter. A fire fighter only assumes hazards which are known and can be reasonably anticipated[2] at the site of the fire and are a part of fire fighting.

694 P.2d at 439.[3]

---

[1]     Part of the underpinning of the public policy rationale is the fact that injured firefighters are compensated for their injuries under regimes such as workmen's compensation. *See Calvert*, 694 P.2d at 438. The plaintiff-firefighters in this case received such benefits.

[2]     A hazard that "can be reasonably anticipated" is not hidden.

[3]     The *Calvert* court also adopted two other exceptions to the Fireman's Rule – intentional acts of misconduct by a third party and subsequent acts of negligence or misconduct upon the arrival of the firefighter at the scene – but neither of these exceptions apply in this case.

Since its decision in *Calvert*, the Kansas courts have not had occasion to expound on the "hidden hazard" exception to the Fireman's Rule.[4] But because the Kansas Supreme Court followed the reasoning of the *Clark* court when it adopted the Rule, including the "hidden hazard" exception, we predict the Kansas Supreme Court would follow the test announced in *Clark* as to when the "hidden hazard" exception applies.

> [T]o trigger [the] duty to warn [of a hidden hazard] there must coexist the following four prongs:  (1) A hidden hazard – a concealed danger that foreseeably created an unreasonable risk to others; (2) which hidden hazard or danger is known to the landowner; (3) which hidden hazard or danger is not known and not observable by the fire fighter; and (4) existence of a clear opportunity for the landowner to give warning of the hidden hazard.

*Clark*, 249 N.W.2d at 570.

We agree with the district court that the "hidden hazard" test applies here, and precludes plaintiffs' claims.  First, there is no evidence that the paint thinner stored in the container box was a "hidden hazard" or that explosion was foreseeable.  We address first whether the paint thinner was a "hidden hazard."  Plaintiffs attempted to prove a "hidden hazard" on the basis of two expert reports.  One expert, Jon J. Pina, opined that Central Tank's failure to post warning signs on the trailer or box violated numerous regulations, including the Code of Federal Regulations (CFR), the

---

[4]     Plaintiffs rely heavily on *McKernan ex rel. McKernan v. General Motors Corp.*, 3 P.3d 1261 (Kan. 2000).  That reliance is misplaced because *McKernan* involved product defect claims against a third party who attempted to invoke protection of the Fireman's Rule.

Occupational Safety & Health Administration (OSHA), and the American National Standards Institute (ANSI). In particular, plaintiffs argue that Mr. Pina stated that Central Tank's "cargo box on the trailer . . . violated OSHA, ANSI, and CFR's because the box was not marked with any signage to alert others that the contents of the box were hazardous or flammable." Aplt. Opening Br. at 19. Plaintiffs' other expert, Robert C. Krause, opined that "[t]he responding firefighters had no prior knowledge of the storage of these flammable materials within the metal container and the lack of any exterior signage or warnings contributed to their lack of information." Aplt. App. Vol. 2 at 491.

There are several problems with this argument. Setting aside the issue of foreseeability, which we discuss below, Mr. Pina's report does not cite a single regulation that says storing paint thinner in a closed container is a hazard, or that a box with such contents must be marked. Nor does Mr. Krause identify any requirement that the container box be marked.

As to foreseeability, plaintiffs argue that Mr. Pina "opined that the close proximity of [Central Tank's] truck and metal storage container to the area where welding and cutting activities were taking place significantly increased the hazard." Aplt. Opening Br. at 19-20. However, this ignores that neither the fire nor ensuing explosion were foreseeable. "An accident that is not reasonably foreseeable by the exercise of reasonable care and prudence is not sufficient grounds for a negligence action." *Woodruff v. City of Ottawa*, 951 P.2d 953, 956 (Kan. 1997). "Natural and

- 9 -

probable consequences are those that human foresight can anticipate because they happen so frequently they may be expected to recur." *Chaplin v. Gas Serv. Co.*, 397 P.2d 317, 320 (Kan. 1964) (internal quotation marks omitted). The undisputed material facts are that several hours after Central Tank completed its work on the roof and left the site, the wooden members of the tower caught fire, fell to the ground, caught the surrounding grass on fire and eventually spread to the tires of the trailer. This domino chain of events was unforeseeable.

More to the point, these unsworn expert reports are not competent evidence on summary judgment. *See* Fed. R. Civ. P. 56(c)(4) advisory committee's notes (2010 Amendments) (Although "[a] formal affidavit is no longer required," Rule 56(c)(4) still requires that "a written unsworn declaration, certificate, verification, or statement [be] subscribed in proper form as true under penalty of perjury [under 28 U.S.C. § 1746] to substitute for an affidavit."). Because neither report contains proper subscriptions, they cannot be considered on summary judgment.

Second, despite plaintiffs' argument that "[t]he explosion was caused by *inappropriate* storage of hazardous and flammable chemicals in the ventless metal box," Aplt. Opening Br. at 4 (emphasis added), there is no evidence that it was improper to store paint thinner in the container box. There is also no evidence that Central Tank knew that the storage of paint thinner was dangerous.

Third, the danger was known or could have been reasonably anticipated, and thus not hidden. A tire fire was burning directly under the container box. Although

no one knew precisely what was inside the box, Chief Roth observed green and red hoses in the area of the trailer, which he assumed were connected to oxygen/acetylene tanks inside the box. Fireman Ehm and Chief Roth discussed their concerns about the presence of the hoses and the potential for an explosion. And even though Firemen Lowe and Johnson may not have observed the hoses, they discussed with Chief Roth the danger of opening the box, because either the interior could be on fire or opening the box could allow oxygen to enter and ignite its ingredients.

We acknowledge that the open presence of several containers of paint thinner labeled "FLAMMABLE LIQUID" near the rear of the trailer, alone, is not dispositive for Central Tank. But the presence of these materials, coupled with the other indicia of danger, including a tire fire burning directly under the container box which several firefighters believed contained oxygen/acetylene tanks, created a situation where an explosion could be reasonably anticipated. As the least experienced firefighter on the scene explained, "anything can happen" when fighting a fire where a container box is involved. Aplt. App. Vol. 2 at 778.

Fourth, there was no chance for Central Tank to give a clear warning because it was unaware of the fire, which first manifested itself two hours after its crew left the site. Nor did Central Tank know that plaintiffs had responded to the fire either prior to or during the explosion.

We have reviewed the matter de novo and conclude that plaintiffs failed to demonstrate the existence of a disputed material fact regarding whether they could have reasonably anticipated the explosion and their claims are therefore barred by the Fireman's Rule as adopted in Kansas.

The judgment of the district court is affirmed.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge