19 A.3d 369

**Richard WHITE**

v.

**STATE of Maryland.**

**No. 36, Sept. Term, 2009.**

Court of Appeals of Maryland.

April 27, 2011.

266

Henry L. Belsky (Schlachman, Belsky & Weiner, P.A., Baltimore, MD; Kimberly A. Alley of Kenney & Sams, P.C., Southborough, MA), on brief, for petitioner.

Carl N. Zacarias, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

 Maryland's so-called "fireman's rule," which we shall hereinafter refer to as the "firefighter's rule," is a common law rule that generally precludes police officers and firefighters injured in the course of their duties from suing those whose

negligence necessitated the public safety officers' presence at the location where the injury occurred. We hold that, under the facts of this case, the firefighter's rule bars Petitioner, Richard White, a police officer injured during a high-speed chase of a fleeing suspect, from suing Respondent, State of Maryland, the employer of a police dispatcher whose negligence caused Petitioner to engage in the high-speed chase.[1]

## I.

The following undisputed facts were adduced at trial. On the morning of October 24, 2002, Petitioner was on duty as a police officer for the town of Thurmont, in Frederick County, Maryland. That morning, Craig Main, an employee of the Ace Hardware store in Thurmont, placed a 911 call to report an incident that had just occurred at the store. The call was routed to the Maryland State Police Barrack in Frederick, where it was answered by the dispatcher, William Henrickson, an employee of the Maryland State Police. The call, set forth below, was recorded and later played at trial.

> [Henrickson]: Maryland State Police in Frederick CPO Henrickson, how may I help you?
>
> [Main]: Yeah I'm in Thurmont at the Ace Hardware. I just got shafted. A guy just robbed it.
>
> [Henrickson]: At the Ace Hardware Store?
>
> [Main]: Yeah.

Henrickson dispatched to the police Main's call for assistance. The audiotape of the dispatch reveals that Henrickson dispatched the call for help as: "Frederick, all cars, an *armed robbery* just occurred at the Ace Hardware in Thurmont." (Emphasis added.) The dispatch also included a description of the getaway vehicle as "a red Nissan" last seen heading toward Route 15.

---

1. This case comes to us from the Court of Special Appeals' affirmance of the trial court's ruling, at the end of all the evidence, granting judgment in favor of Respondent. Consequently, we present all of the evidence in the light most favorable to Petitioner. *See, e.g., Prince George's County v. Brent*, 414 Md. 334, 349, 995 A.2d 672, 681 (2010).

Petitioner received the call and soon located the suspects driving on a nearby roadway. Petitioner initiated pursuit. He activated the lights on his cruiser, which automatically activated the video camera mounted on the dashboard. The videotape of the pursuit was admitted into evidence at trial. It revealed the following events.

Petitioner and several other police officers, in their respective police cruisers, pursued the suspects over mostly rural, two-lane roads that do not have a shoulder. The suspects' vehicle is not seen in the video recording. Petitioner, though, communicated to Henrickson that he was in sight of the vehicle intermittently throughout the chase.

Approximately nine minutes into the chase, Petitioner approached a particularly sharp left turn on Yellow Springs Road, a two-lane roadway with a speed limit of 35 miles per hour. The camera recorded both a street sign that warned of the upcoming curve and three vehicles driving along the curve in the opposite direction of Petitioner's vehicle. The recording shows that Petitioner remained in his lane as he entered the curve but eventually lost control of the vehicle. It fish-tailed off the road, struck a culvert, became airborne, then collided with a tree. Petitioner suffered severe injuries that rendered him unable to recall the chase or any of the events preceding it.

*The Trial and Appeal*

Petitioner filed a complaint in the Circuit Court for Frederick County, Maryland, naming as defendants Henrickson and Respondent, State of Maryland, and alleging that Henrickson was negligent in issuing the dispatch. Petitioner alleged that Henrickson "owed [Petitioner] a duty to use reasonable care and/or the skill and care of a reasonably competent police dispatcher[,]" and Henrickson breached that duty of care when:

[He] requested emergency personnel response to an armed robbery at the Ace Hardware Store rather than a mere shoplifting, failed to inquire as to whether the suspects had shown or used any type of weapon during the incident prior

to dispatching and/or requesting emergency personnel response, failed to make any substantive inquiry as to the threat posed by the suspects to the general public prior to dispatching and/or requesting emergency personnel response, and was in other ways careless, reckless and negligent.

Petitioner further alleged that he relied upon Henrickson to use reasonable care to provide accurate information and would not have commenced the high-speed chase had he not been given the false information that the suspects were armed. Petitioner sued Respondent under the theory of *respondeat superior* and alleged negligent hiring/supervision and negligence in supervising 911 dispatch protocols.

Before trial, the Circuit Court granted Henrickson's motion to dismiss the complaint on the basis of qualified immunity. The court, however, denied Respondent's motion to dismiss the suit, which asserted, inter alia, that the firefighter's rule barred Petitioner's claim. The court also denied Respondent's later motion for summary judgment raising the same argument.

At trial, Petitioner presented evidence of the undisputed facts we summarized above. Petitioner also presented the testimony of Henrickson, who acknowledged that one of the cardinal rules of dispatching is that a communications officer, when talking to a victim, must determine if the perpetrator is armed. Henrickson also conceded that the crime giving rise to the dispatch in question—shoplifting from a hardware store without any use of force—would qualify as a lower-priority call for a responding officer than a call for response to an armed robbery.

Charles Key, who was qualified as an expert in "police training, protocol and procedures[,] including high-speed pursuit and dispatch communications[,]" testified for Petitioner that his actions on the date in question were consistent with standard police training procedures and the actions of a reasonable police officer in the same or similar circumstances. Key opined that Petitioner would not have engaged in the

high-speed pursuit if the dispatcher had described the crime as a simple theft.

At the conclusion of Petitioner's case-in-chief, Respondent moved for judgment, asserting, among other grounds, that Petitioner was barred from recovery by (1) operation of the firefighter's rule, and (2) his contributory negligence in conducting the pursuit. The court denied the motion. Respondent then presented in its case additional evidence of Petitioner's contributory negligence, which included expert testimony on the subject.

At the close of all the evidence, Respondent re-asserted both the firefighter's rule and contributory negligence as grounds for its renewed motion for judgment. The court granted the motion on both asserted grounds.

Petitioner argued on appeal to the Court of Special Appeals that neither the firefighter's rule nor the doctrine of contributory negligence entitled Respondent to judgment as a matter of law. The Court of Special Appeals affirmed the judgment, holding that the trial court correctly granted judgment in favor of Respondent, by application of the firefighter's rule. *See White v. State*, 183 Md.App. 658, 664, 963 A.2d 222, 226 (2008). The court did not address Petitioner's contributory negligence argument.

Tracing the development of the firefighter's rule in Maryland, the Court of Special Appeals noted that the rule is now based on public policy that recognizes the relationship between public safety officers, who have assumed certain occupational risks, and the public, whom those officers serve and protect. *Id.* at 669–72, 963 A.2d at 229–32. The court concluded that Petitioner was injured in the course of his duties as a police officer and no "exceptions" to the firefighter's rule applied; therefore, the lawsuit "fits squarely within the Fireman's Rule as it has evolved in this State." *Id.* at 676–77, 963 A.2d at 233–34.

We granted Petitioner's petition for writ of certiorari to consider two questions, which we have re-phrased:

1. Whether the Court of Special Appeals erred in concluding that a police officer injured during a high-speed pursuit is barred by the firefighter's rule from recovering in a tort action alleging negligence by a police dispatcher in giving the police officer faulty information that led to the commencement of the high-speed pursuit?

2. Whether the Court of Special Appeals erred in declining to address whether a "special duty" exception to the firefighter's rule should be recognized in Maryland?

We agree with the Court of Special Appeals that Petitioner's suit is barred by application of the firefighter's rule and therefore affirm the judgment of that court. For reasons we shall explain, we decline to address the second question Petitioner presents.

## II.

■ "[T]he doctrine known as the fireman's rule generally prevents fire fighters and police officers injured in the course of their duties from recovering tort damages from those whose negligence exposed them to the risk of injury." *Southland Corp. v. Griffith*, 332 Md. 704, 713, 633 A.2d 84, 88 (1993).[2] In 1925, Maryland joined a number of other states in recognizing this common law rule, and, like our sister jurisdictions did at the time, we grounded the doctrine on a theory of premises liability.[3] *See Steinwedel v. Hilbert*, 149 Md. 121, 123–24, 131 A. 44, 45–46 (1925) (applying the then-prevailing common law

---

**2.** *Southland Corp.* was not decided under the firefighter's rule but rather the duty of a business owner to its business invitee. *See* 332 Md. at 715, 633 A.2d at 89. The case nonetheless contains a good summary of the firefighter's rule. We cite it, here, for that purpose.

**3.** The firefighter's rule was conceived in 1892, in *Gibson v. Leonard*, 143 Ill. 182, 32 N.E. 182 (1892). That case involved a firefighter's suit against a landowner for negligently maintaining an elevator that malfunctioned, causing the firefighter to be injured during his investigation of a fire. Despite the landowner's negligence, the Illinois Supreme Court determined, based on premises liability law, that the firefighter was a mere licensee when he entered the property and thus could not recover for the landowner's negligence. *Id.* at 183. Since *Gibson* was decided, nearly every state adopted the firefighter's rule, although some have subsequently abandoned the rule. *See* David L. Strauss, Com-

firefighter's rule, grounded on premises liability, to hold that the firefighter, who entered the premises leased by the defendant to fight a fire and was injured when he fell down an elevator shaft, could not recover damages from the defendant because "the owner or occupant of the premises is not under any duty of care to keep his premises prepared and safe for a fireman").

In 1987, with our decision in *Flowers v. Rock Creek Terrace*, 308 Md. 432, 520 A.2d 361 (1987), we shifted away from premises liability as the undergirding rationale for the firefighter's rule. *Flowers* is particularly instructive in understanding the current iteration of Maryland's firefighter's rule.

In *Flowers*, we traced the development of the rule in Maryland and elsewhere and concluded that the rule was "best explained by public policy[,]" rather than the law of premises liability. *Id.* at 447, 520 A.2d at 368. We reasoned that the very nature of the firefighter's or police officer's occupation limits the public safety officer's ability to recover in tort for work-related injuries. *Id.*, 520 A.2d at 368. We read our prior decision in *Aravanis v. Eisenberg*, 237 Md. 242, 206 A.2d 148 (1965), as evidencing the need to abandon premises liability as the foundation for the rule. We explained that, although our application of the firefighter's rule in *Aravanis* "purported to be grounded on the law of landowner's liability and the status of the plaintiff on the premises," we also acknowledged in *Aravanis* "the implications of a fireman's public function regardless of whether he was classified as a licensee or invitee upon the property." *Flowers*, 308 Md. at 442, 520 A.2d at 365–66. We noted, too, the *Aravanis* Court's caveat "that a fireman's occupation does not involve facing unlimited risks on behalf of the public[.]" *Id.*, 520 A.2d at 366. In that regard we said: " 'It is when the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that

ment, *Where There's Smoke, There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 WISC. L.REV. 2031, 2032 (1992).

risk, that the justice of continuing to regard him as a licensee only is questioned.' " *Id.,* 520 A.2d at 366 (quoting *Aravanis,* 237 Md. at 252, 206 A.2d at 148).

We also looked in *Flowers* to *Sherman v. Suburban Trust Co.,* 282 Md. 238, 384 A.2d 76 (1978). *Sherman* involved a police officer who sued a bank for injuries he sustained when, during his response to a call from a bank that someone was attempting to pass a forged check, he struck his back on a coin changing machine.[4] We recognized in *Sherman,* as we had done in *Aravanis,* that, after the initial period of anticipated risk, a public safety officer may be entitled to ordinary due care. We held, though, that Officer Sherman's status had not changed at the time of his injury, and, consequently, the firefighter's rule applied to bar his suit against the bank. We explained why:

> Sherman was injured during, and not after, the initial period of his anticipated occupational risk, and from a hazard reasonably foreseeable as a part of that risk. He was not injured by reason of any active dangerous force unleashed on the premises after he entered upon the routine performance of his duties....

282 Md. at 246, 384 A.2d at 81.

We saw in *Flowers* that all three previous Maryland cases— *Sherman, Aravanis,* and *Steinwedel*—"applied the proper standard of care owed to firemen and policemen, and the decisions were correct." *Flowers,* 308 Md. at 443, 520 A.2d at 366. Yet, the premises liability rationale that undergirded the firefighter's rule at the time those three cases were decided "would not seem to be entirely appropriate for resolving the issues in cases like this. A premises liability rationale does not encompass cases in which a fireman is injured by a fire caused by the negligence of someone other than the owner or occupier of the premises." *Id.,* 520 A.2d at 366. Realizing the

---

**4.** By our reckoning, *Sherman* is the first opportunity we had to apply the prevailing view that the standard of care owed to firefighters applies with equal force to police officers. *See Flowers,* 308 Md. at 442 n. 4, 520 A.2d at 366 n. 4 (collecting cases from other jurisdictions that apply the rule to both firefighters and police officers).

need for a broader reach of the firefighter's rule, untethered to the doctrine of premises liability, we held:

[A]s a matter of public policy, firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance. This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public. A fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity. Someone who negligently creates the need for a public safety officer will not be liable to a fireman or policeman for injuries caused by this negligence.

*Flowers*, 308 Md. at 447–48, 520 A.2d at 368.[5]

We recognized in *Flowers*, as we had done in *Aravanis* and *Sherman*, that the firefighter's rule does not bar recovery of tort damages for all improper conduct. *Id.* at 448, 520 A.2d at 368–69. We explained that "[n]egligent acts not protected by the fireman's rule may include failure to warn the firemen of pre-existing hidden dangers where there was knowledge of the danger and an opportunity to warn." *Id.*, 520 A.2d at 369. We also recognized that the firefighter's rule does not bar suits against "arsonists or those engaging in similar misconduct." *Id.* at 449, 520 A.2d at 369. Finally, the rule does not cover "acts which occur subsequent to the safety officer's

---

**5.** Among our sister states that recognize the firefighter's rule, some currently rest the rule on the same public policy grounds as Maryland now does. Other states now rest the doctrine on an assumption of risk theory: that firefighters are in the business of fighting fires, voluntarily assume the inherent occupational risks, and therefore should not recover for reasonably foreseeable fire-related injuries. *See Flowers*, 308 Md. at 445–47, 520 A.2d at 367–69 (discussing various theories for the firefighter's rule).

More recently, some states have abolished the rule, believing it to be antiquated. New Jersey's legislature abrogated the rule in 1993, N.J. STAT. § 2A:62A–21 (2011), as did the Florida and Minnesota legislatures in 1990, *see* FLA STAT. § 112.182 (2011), and 1982, MINN. STAT. § 604.06 (2010), respectively. The Oregon Supreme Court abrogated the rule in *Christensen v. Murphy*, 296 Or. 610, 678 P.2d 1210, 1217–18 (1984).

arrival on the scene and which are outside of his anticipated occupational hazards." *Id.* at 448, 520 A.2d at 369. This last example of non-coverage of the rule is consistent with our prior discussion in *Aravanis* that the firefighter's rule does not apply "when the fireman sustains injuries after the initial period of his anticipated occupational risk, *or from perils not reasonably foreseeable as part of that risk." Flowers,* 308 Md. at 448, 520 A.2d at 369 (citing *Aravanis,* 237 Md. at 252, 206 A.2d at 153) (emphasis added).

With that explication of the firefighter's rule as a backdrop, the *Flowers* Court applied the rule to the facts of the case. The plaintiff, firefighter David Flowers, plummeted twelve floors down an open elevator shaft while attempting to evacuate people from a burning apartment building. *Id.* at 436, 520 A.2d at 363. He sued in tort the owner of the building, the private security company that monitored the building, and the manufacturer of the elevator. We held that the firefighter's rule barred the suit against all three defendants.

With respect to the claims against the building owner and the security company for negligently failing to prevent the fire, we held that Flowers's claims were "precisely what the fireman's rule prevents." *Id.* at 450, 520 A.2d at 370. That is because "firemen are engaged to fight fires for the public, and they enter upon dangerous circumstances without regard to whether the fire is attributable to otherwise tortious conduct." *Id.,* 520 A.2d at 370. As for the suit against the elevator manufacturer, we stated:

> Although these are not allegations of negligence in the creation of the fire that originally brought the firemen to the apartment building, an accident involving an open elevator shaft nevertheless is within the range of the anticipated risks of firefighting.... An open elevator shaft concealed by the smoke of the fire is not a hidden danger in the sense of an unreasonable danger that a fireman could not anticipate upon attempting to perform his firefighting duties.

*Id.* at 451–52, 520 A.2d at 370–71.

We applied the reasoning of *Flowers* in *Tucker v. Shoe-make,* 354 Md. 413, 731 A.2d 884 (1999), and more recently in

*Hart v. Swaroop, Inc.,* 385 Md. 514, 870 A.2d 157 (2005). Those two cases serve as useful guideposts for our analysis of the present case.

*Tucker* presents a clear example of the inapplicability of the firefighter's rule. In that case, the plaintiff, Officer Tucker, sustained injuries after he fell into a negligently maintained manhole while creeping up to the location of a domestic violence report. *Tucker,* 354 Md. at 415–16, 731 A.2d at 885. Officer Tucker sued the individual responsible for maintenance of the manhole cover, who, in response, contended that the firefighter's rule barred the suit. We rejected that contention, explaining:

> Officer Tucker was not injured by a negligently-created risk that occasioned his presence at the trailer park. He was at the trailer park in response to a domestic dispute call, whereas he was injured as a result of stepping on the allegedly improperly seated metal cover to the underground valve compartment. Thus, the negligence alleged to have caused Officer Tucker's injuries *was independent and not related to the situation requiring his services as a police officer.*

354 Md. at 419–20, 731 A.2d at 887 (emphasis added).

We rejected in *Tucker* a "transactional approach" to application of the firefighter's rule, which, as advocated by the respondent in that case, would bar a public safety officer's recovery for all "acts of negligence which injure them, so long as the officer is injured during the transaction of performing an obligation of his occupation...." *Id.* at 421, 731 A.2d at 888. We refused to adopt such a broad approach to the rule, repeating, by way of explanation, our previous caution in *Flowers* that the firefighter's rule does not bar recovery for all negligent conduct.[6] *Id.,* 731 A.2d at 888.

---

**6.** Consistent with, although predating, *Tucker* is *Schreiber v. Cherry Hill Constr. Co.,* 105 Md.App. 462, 660 A.2d 970 (1995), in which the Court of Special Appeals considered whether a police officer who was injured by a passing driver while inspecting an accident at a negligently designed road construction site could recover from the passing driver

■ Notwithstanding that the firefighter's rule has its limits, our recent opinion in *Hart* makes clear that the rule applies whenever the officer is injured by risks "inherent[ ] [in the] dangerous occupation" of firefighting and law enforcement, *Hart,* 385 Md. at 534, 870 A.2d at 168, so long as the risks are *"directly related to "* the situation requiring the firefighter's or police officer's services, *id.* at 529, 870 A.2d at 165. We held in *Hart* that the firefighter's rule barred the firefighter's suit against a negligent motel owner for injuries the firefighter suffered when he fell down a negligently unguarded stairwell while navigating through heavy smoke to gain access to the second floor of the building. *See id.* at 534, 870 A.2d at 168.

We reasoned that "Hart can only escape the barring effect of the fireman's rule if he can show that his injury occurred 'after the initial period of his anticipated occupational risk' or because of a 'pre-existing hidden danger[ ] where there was knowledge of the danger and an opportunity to warn.' " *Id.* at 525, 870 A.2d at 163 (quoting *Flowers,* 308 Md. at 448, 520 A.2d at 369). We "quickly dispose[d] of" Hart's first contention that his injury occurred after the initial period of his anticipated occupational risk. We explained that Hart was injured when he *"was unquestionably in the process of performing the duty for which he was ordered*—to rescue any motel patrons trapped by the fire." Id. at 525, 870 A.2d at 163 (emphasis added).

We also rejected Hart's second contention that the open stairwell was a " 'pre-existing hidden danger' " to him at the time of his injury; this was so, according to Hart, because the condition " 'pre-existed[ ] and was independent of the fire[.]' "

___

and from the construction company. The Court of Special Appeals held that the firefighter's rule did not bar the officer's claims because her injuries were "separate" from the original act requiring her presence. *Id.* at 475, 660 A.2d at 976; *see also Rivas v. Oxon Hill Joint Venture,* 130 Md.App. 101, 744 A.2d 1076, *cert. denied,* 358 Md. 610, 751 A.2d 471 (2000) (holding that the firefighter's rule did not apply where an officer slipped on ice outside an apartment complex while serving a subpoena).

*Id.* at 526–27, 870 A.2d at 164. We recognized that, like the elevator in *Flowers,* the unguarded stairwell was not the impetus that required Hart's services in the first place. Yet the immediate cause of Hart's injury (the unguarded stairwell) was indistinguishable in material respect from the immediate cause of Flowers's injury (the open elevator shaft). *Id.* at 528, 870 A.2d at 165. And, as in *Flowers,* the circumstances surrounding Hart's fall triggered application of the firefighter's rule to bar the suit. We explained why the two cases commanded the same result: (1) the fire in each case "played a key part in bringing about the fall causing" each firefighter's injury; and (2) in each case, "the smoke from the fire inhibited" the firefighter's "ability to notice" the immediate cause of the injury that was in the firefighter's "path." *Id.* at 528–29, 870 A.2d at 165. We added:

> When a firefighter enters upon property for the purposes of fighting a fire, he or she must generally bear the risk of being injured by causes relating to or arising out of the fire. Hart's inability to perceive an open stairwell before him as he made his way to the motel building was *directly related* to smoky conditions from the fire itself.

*Id.* at 529, 870 A.2d at 165.

We explained that the concealed stairwell was "the direct result of the secondary effects of the fire itself, *i.e.,* the smoke," *id.* at 528, 870 A.2d at 165, and was not a "preexisting hidden danger" because it was not the product of deliberate and knowing " 'concealment or deceptive appearance, something like fraud, put in the path of the [firefighter], as would render the danger a trap,' " *id.* at 526, 870 A.2d at 164 (quoting *Steinwedel,* 149 Md. at 125, 131 A. at 46). Instead, just as in *Flowers,* the danger was "made imperceptible by the very reason [Hart was] in the area of the danger[ ]—the fire and its resultant smoke." *Hart,* 385 Md. at 528, 870 A.2d at 165.

With all of these cases as a backdrop, we turn to the contentions in the present case.

### III.

■ Petitioner makes three principal arguments in support of his claim that the Circuit Court erred in granting Respondent's motion for judgment on the ground that Petitioner's claim is barred by the firefighter's rule. Petitioner argues that the firefighter's rule does not apply, given the events precipitating his injuries. He suggests, in that regard, that his injuries resulted from Henrickson's negligence, which was independent of the cause for his services (the theft from the hardware store), and therefore his case is akin to *Tucker*, in which the firefighter's rule was held inapplicable. Petitioner separately argues that the rule does not bar his suit because Henrickson's negligent dispatch was not a reasonably foreseeable occupational risk, as was the case in *Sherman*; additionally, given the ten-minute delay between the dispatch and Petitioner's accident, Henrickson "had both knowledge" of his erroneous dispatch "and the opportunity to warn" Petitioner of the error. Petitioner raises a third argument, put forward most clearly in his reply brief, that application of the firefighter's rule under the circumstances of this case would be inconsistent with the "public policy" underlying the rule. Petitioner implies that the firefighter's rule prevents only those suits by emergency responders that are brought *against citizens* for injuries suffered in the course of providing emergency services necessitated by the citizens' negligence. Petitioner argues that, because it was the dispatcher, Henrickson, a State employee, whose negligence caused Petitioner's injuries, the firefighter's rule is inapplicable.

Respondent urges us to affirm the judgment of the Court of Special Appeals. According to Respondent, Petitioner sustained injuries "while performing a quintessential police function, a high-speed pursuit of criminal suspects," and therefore this lawsuit falls squarely within the ambit of the firefighter's rule. Respondent argues that application of the rule in the present case makes sense on public policy grounds because "the thought of possible civil liability should never enter into an emergency responder's consideration when confronting emergency circumstances." Respondent disputes Petitioner's

contention that the case falls outside the scope of the firefighter's rule, explaining that Petitioner was injured in the course of confronting an "anticipated occupational risk" and Henrickson, who had no knowledge of the "sharp curve on Yellow Springs Road" where Petitioner crashed, had no ability to warn Petitioner of a "pre-existing hidden danger."

### A.

Petitioner maintains the view that Henrickson's negligent dispatch was "independent and not related to" the act requiring his services, which he considers to be the larceny at the hardware store. We disagree. Petitioner was called not to investigate the larceny at the hardware store, but to pursue the fleeing "armed robbery" suspects. The direct impetus, then, for Petitioner's service was not the earlier larceny (though certainly it set into motion the chain of events that followed), but, rather, Henrickson's negligent act of reporting the suspects as having fled an armed robbery. Our cases make clear that Petitioner's suit against Respondent is barred because he was "injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity." *Flowers,* 308 Md. at 447–48, 520 A.2d at 368.

We also reject Petitioner's contention that his injuries were the result of a "pre-existing hidden danger," of which Henrickson had knowledge and opportunity to warn. As we made plain in *Hart,* to find that a public safety officer is owed a duty of care under this circumstance would require evidence that the alleged tortfeasor had engaged in knowing "concealment or deceptive appearance, something like fraud, put in the path of the [officer], as would render the danger a trap." 385 Md. at 526, 870 A.2d at 164 (internal quotation marks and citation omitted). There is no such evidence present in the case at bar.

Nor are we persuaded by Petitioner's argument that Henrickson's negligent dispatch was not a foreseeable occupational risk. Petitioner was injured when he "was unquestion-

ably in the process of performing the duty for which he was ordered[,]" that is, to engage in a high-speed pursuit. *See Hart*, 385 Md. at 525, 870 A.2d at 163. High-speed pursuits of suspected armed suspects come within the range of hazards that a police officer is expected to confront in the course of his or her duties on behalf of the public. *Cf. Crews v. Hollenbach*, 358 Md. 627, 653, 751 A.2d 481, 495 (2000) ("Stated differently, a firefighter who is injured by a risk inherent in the task of firefighting may be barred from asserting claims for those injuries because it is the firefighter's duty to deal with fires and he or she cannot recover damages caused by the reason that made his or her employment necessary.").[7]

We therefore conclude that the firefighter's rule applies to bar Petitioner's claim, unless, as he suggests, the rule does not apply to suits between fellow public safety officers. We turn next to that contention.

### B.

Petitioner devotes just a few sentences to his argument that the firefighter's rule is inapplicable to suits between public safety officers. And, he does not provide, nor have we located, any authority to support the proposition. Our research, moreover, discloses no such limitation on the firefighter's rule. That said, we have not found a case in which a court has confronted directly such a contention and expressly rejected it. We, however, have found cases in which appellate courts have applied the firefighter's rule to bar lawsuits

---

7. For much the same reason, even if we were to view more broadly the service Petitioner provided in the present case as responding to investigate the hardware store larceny and not the call to capture the fleeing suspects, the result would be no different. The firefighter's rule applies to injuries from "hazards reasonably foreseeable as part of [the anticipated occupational] risk" that are directly related to the events requiring the officer's services. *Sherman*, 282 Md. at 246, 384 A.2d at 81. *Accord Flowers*, 308 Md. at 451, 520 A.2d at 370 (holding that an accident involving an open elevator shaft is "within the range of anticipated risks of fire-fighting"). Given the nature of a police officer's occupation, it is within the range of reasonably foreseeable, anticipated risks that, in the process of dispatching a 911 call, a dispatcher may inaccurately transmit information.

brought by public safety officers against government employees. In *Wadler v. City of N. Y.*, 14 N.Y.3d 192, 899 N.Y.S.2d 73, 925 N.E.2d 875, 876 (2010), for example, the New York Court of Appeals held that the firefighter's rule applied to bar a suit brought by the plaintiff police officer for injuries sustained while driving through the entrance of the parking lot to the New York City Police Headquarters in Manhattan, as a result of a fellow police officer's negligent operation of the parking gate. *See also Cooper v. City of NY*, 81 N.Y.2d 584, 601 N.Y.S.2d 432, 619 N.E.2d 369 (1993) (holding that the firefighter's rule applied to bar a suit brought by one officer for injuries sustained in the course of responding to a 911 call, as a result of the negligent driving of a fellow officer); *Santangelo v. State*, 71 N.Y.2d 393, 526 N.Y.S.2d 812, 521 N.E.2d 770 (1988) (holding that the firefighter's rule barred suit by two police officers against state employees for injuries suffered in the course of subduing a mental patient who had escaped from a mental hospital as a result of negligent supervision). The application of the firefighter's rule in New York today is largely dictated by statute. *See* N.Y. GEN. OBLIG. LAW § 11–106 (2011) (enacted in 1996 and limiting application of the firefighter's rule to suits brought by a safety officer against his or her employer or co-employee). Of relevance here, though, New York courts, before and after the 1996 enactment, have not hesitated to apply the rule to cases involving fellow public safety officers.

New York is not unique in this regard. *See, e.g., Calatayud v. State*, 18 Cal.4th 1057, 77 Cal.Rptr.2d 202, 959 P.2d 360, 363 (1998) (applying the firefighter's rule to bar suit between fellow police officers for negligently caused injuries, and stating that application of the rule in that case is consistent with the "public policy decision to meet the public's obligation to its officers collectively through tax-supported compensation rather than through individual tort recoveries") (citation omitted); *McGhee v. Mich. State Police Dep't*, 184 Mich.App. 484, 459 N.W.2d 67, 68 (1990) (per curiam) (holding that the firefighter's rule barred a police officer's suit against fellow officers for injuries sustained as a result of a negligently initiated and

executed high-speed car chase; explaining that such injuries "were the result of risks and hazards inherent in police work" and "a foreseeable occurrence stemming from the performance of the officer's police duties").

One additional case, consistent with the cases we have discussed, was brought to our attention during oral argument. That case, *Beaupre v. Pierce County*, 161 Wash.2d 568, 166 P.3d 712 (2007), involved Sergeant Beaupre, who, when chasing on foot a suspect who was fleeing in a car, was struck by a car driven by a fellow officer who was also in pursuit of the suspect. *Id.* at 714. Beaupre sued the county in negligence. The county moved for summary judgment, arguing that the professional rescue doctrine (analogous to the firefighter's rule for our purposes) barred the suit because "being hit by another patrol car during a foot pursuit was an inherent risk of the particular rescue operation." *Id.* The trial court denied that motion, ruling that the professional rescue doctrine did not apply.

On appeal, the Washington Supreme Court affirmed the trial court's ruling. The court held that the professional rescue doctrine did not bar suit against the county because, under the facts of the case, the negligent act that caused Beaupre's injury was the act of an "intervening part[y]" (the fellow officer) who was "not responsible for bringing [Beaupre] to the scene." *Id.* at 717. Though, like the other cases we have cited, the Washington Supreme Court in *Beaupre* did not directly address the issue, it appears from the court's analysis that the negligent officer's status as a fellow public safety officer was of no relevance in the court's determining the inapplicability of the doctrine.

We mention these cases from our sister jurisdictions not because the firefighter's rule, as it is understood in those states, is identical to Maryland's rule in its premise and scope of application. We mention them to make the point that, regardless of the various formulations of the rule, no court appears to have limited the rule to bar only suits brought by public safety officers against citizens.

Petitioner has given us no reason, based either in law or policy, to limit application of Maryland's firefighter's rule to suits against citizens. Further, to adopt such a limitation on the rule runs counter to its undergirding public policy, which recognizes that the very nature of the firefighter's or police officer's occupation limits the public safety officer's ability to recover in tort for work-related injuries.

For all these reasons, we hold that the firefighter's rule bars Petitioner's suit against Respondent. It follows that the Circuit Court properly entered judgment in favor of Respondent on the basis of the firefighter's rule.

### IV.

Finally, Petitioner asks us to adopt a "special duty exception" to the firefighter's rule. He raised this claim for the first time in his reply brief before the Court of Special Appeals. The intermediate appellate court, quite understandably, made no mention of the claim. *See, e.g., Campbell v. Lake Hallowell Homeowners Ass'n,* 157 Md.App. 504, 535, 852 A.2d 1029, 1047 (2004) (declining to address arguments that the appellant raised for the first time in his reply brief).

Petitioner's general opposition to application of the firefighter's rule before the Circuit Court was not sufficient to afford that court the opportunity to decide this issue. This Court typically will not decide issues not raised in or decided by the trial court. *See* Md. Rule 8–131(a); *Livesay v. Balt. County,* 384 Md. 1, 18, 862 A.2d 33, 43 (2004). We see no reason to do so here.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY PETITIONER.**