No. 111,987

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUAN A. APODACA,
*Appellant*,

v.

MARK WILLMORE,
MATTHEW WILLMORE, and
OAK RIVER INSURANCE COMPANY,
*Appellees*.

SYLLABUS BY THE COURT

1.

The firefighter's rule is deeply rooted in the common law and was initially grounded in the law of premises liability. While some courts opted to base the rule on premise liability and assumption of risk, the Kansas Supreme Court adopted the firefighter's rule as a matter of public policy.

2.

In Kansas, a firefighter cannot recover for injuries caused by the very wrong that initially required his or her presence at the scene in an official capacity and subjected the firefighter to harm. Accordingly, a firefighter is precluded from recovery against an individual whose negligence created the need for the presence of the firefighter at the scene in his or her professional capacity.

3.

There are three recognized exceptions to the firefighter's rule in Kansas: First, when a third party's negligence or intentional misconduct results in an injury to the firefighter; second, when the individual responsible for the firefighter's presence engages in subsequent acts of negligence or misconduct after the firefighter has arrived at the

1

scene; and third, when an individual fails to warn of a known, hidden danger on the individual's premises or for misrepresentations of the nature of the hazard which harm the firefighter.

4.

Law enforcement officers, like firefighters, do not respond to public safety calls in order to fulfill any private duty owed to the person who caused the emergency but because of their duty to the public as a whole.

5.

The public policy of the State of Kansas precludes recovery against an individual whose negligence created a need for the presence of a law enforcement officer performing a public safety function at the scene in an official capacity.

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed May 15, 2015. Affirmed.

*Roger D. Fincher*, of Bryan, Lykins, Hejtmanek and Fincher, P.A., of Topeka, for appellant.

*Joel W. Riggs* and *Craig C. Blumreich*, of Larson & Blumreich Chartered, of Topeka, for appellees.

Before SCHROEDER, P.J., ATCHESON and BRUNS, JJ.

BRUNS, J.: This case presents an issue of first impression in Kansas. We are asked to decide whether the judicially created firefighter's rule (previously referred to as the "fireman's rule") applies to law enforcement officers. We find that the public policy expressed by the Kansas Supreme Court in *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 694 P.2d 433 (1985), applies equally to firefighters and law enforcement officers. Accordingly, we conclude that the firefighter's rule bars law enforcement officers from recovering in negligence actions for injuries they receive in handling public safety calls—

2

such as automobile accidents—as part of their official duties. Moreover, we conclude that the exceptions to the firefighter's rule recognized in *Calvert* are not applicable to this case. Thus, we affirm the district court's decision.

FACTS

At about 3:30 a.m. on October 18, 2009, in Riley County, Matthew Willmore was driving his father's 1998 Ford F-150 pickup north on K-177, which is a four-lane highway separated by a grassy median. Less than a mile north of Interstate 70, Willmore fell asleep at the wheel and rolled the pickup across the median. The truck eventually came to a stop on its wheels, blocking the southbound lanes of the highway. Willmore— who was 18 years old at the time of the accident—had drunk several beers at a friend's house earlier that night.

David McGillis, who was also driving north, witnessed the accident and stopped to assist Willmore. After Willmore exited the pickup truck, he walked to the median where he spoke with McGillis. Willmore then attempted to move the truck but found that it would not start. Although it was dark outside and there were no lights illuminating the highway, Willmore turned off the truck's headlights. He called his parents to inform them of the accident and then began picking up debris from the highway.

In response to a 911 call from McGillis, a dispatcher for the Riley County Police Department (RCPD) advised officers Juan Apodaca and Jonathan Dulaney—who were patrolling together—about the traffic accident. The dispatcher told the officers that the location of the accident was north of Interstate 70 on K-177 and that the vehicle involved in the accident was in the southbound lanes of the highway. Officer Apodaca acknowledged to the dispatcher that the accident was north of Interstate 70. The dispatcher also informed the officers that nobody was injured in the accident.

3

Officer Apodaca drove to the accident scene—with Officer Dulaney in the passenger seat—at a high rate of speed with his emergency lights and sirens activated. Officer Apodaca saw the headlights and flashers from McGillis' vehicle—that was parked on the center-edge of the northbound lanes—from over a mile away, and he believed it was the scene of the accident. Officer Apodaca did not see the disabled pickup in the southbound lanes and struck it while travelling 104 mph. The second accident occurred at 3:42 a.m.

Around 6 a.m., an evidentiary breath test revealed that Willmore's breath alcohol content was .103. During an interview conducted by a RCPD investigator about 5 months after the accident, Officer Apodaca acknowledged that the dispatcher had told him that the accident was north of Interstate 70 and that the truck was blocking the southbound lanes. But the officer stated that for some reason he envisioned the accident scene being south of Interstate 70. Officer Apodaca did not recall the dispatcher telling him that no one was injured in the accident. Instead, Officer Apodaca stated that he was driving at a high rate of speed because he believed someone may have been injured.

As a result of the accident, both Officer Apodaca and Officer Dulaney suffered serious injuries. They applied for and received workers' compensation benefits. On October 17, 2011, the officers filed a joint petition in Shawnee County District Court, alleging that Willmore's negligence caused them to suffer personal injuries and related damages. The officers also asserted a claim of negligent entrustment against Willmore's father. A few months later, Oak River Insurance Company—the liability carrier for the RCPD—intervened as a party to the lawsuit.

On March 22, 2013, Officer Apodaca, Officer Dulaney, and Oak River Insurance Company filed a motion for partial summary judgment concerning the Willmores' claims of comparative fault. One week later, the Willmores also filed a motion for summary judgment. Among other things, the Willmores argued that the firefighter's rule barred all

4

the officers' claims. Shortly thereafter, Officer Dulaney dismissed his claims against the Willmores.

On March 13, 2014, the district court entered a memorandum decision and order denying the motion for partial summary judgment filed by Officer Apodaca and Oak River Insurance Company but granting summary judgment in favor of the Willmores. In its decision, the district court found that the "fire fighters rule should be and is extended to law enforcement officers." Accordingly, it concluded that the firefighter's rule barred Officer Apodaca from recovering in this negligence action because he was acting within the scope of his duties as a law enforcement officer at the time of the accident.

Officer Apodaca filed a motion for reconsideration and, for the first time, asserted that Willmore's actions in causing the initial accident were willful, wanton, reckless, or intentional. In an order entered on May 27, 2014, the district court denied Officer Apodaca's motion, concluding "that the grounds for judgment under K.S.A. 60-259(f) are not presented" and that there "has been no intervening change in the controlling law, no new evidence which was previously unavailable and there is no manifest injustice to correct." Moreover, the district court found that the arguments presented in the motion were either "an attempt to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Thereafter, Officer Apodaca timely appealed to this court.

ANALYSIS

*Standard of Review*

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences

that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules as the district court. *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

In negligence actions, summary judgment should be granted with caution. See *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Nevertheless, summary judgment is generally proper in a negligence action if the only questions presented are questions of law. Here, the parties recognize that the issue presented involves a question of law. Thus, our review in this case is unlimited. See *Martin v. Naik*, 297 Kan. 241, 245, 300 P.3d 625 (2013) (citing *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 220-21, 262 P.3d 336 [2011]).

*Development of the Firefighter's Rule*

The primary issue presented in this negligence action is whether the firefighter's rule should be extended to law enforcement officers. The rule provides that a firefighter cannot recover for injuries caused by the wrong that initially required his or her presence at the scene in an official capacity. *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 576, 694 P.2d 433 (1985). The rule, then, prohibits firefighters from suing the person who was negligently responsible for causing the fire or other hazard for injuries they suffer in responding to and quelling that hazard, subject to several exceptions. Although the Kansas Supreme Court has addressed the firefighter's rule on two occasions, no appellate cases in this state have previously addressed this particular question. Accordingly, we are faced with an issue of first impression in Kansas.

6

The firefighter's rule is rooted in the law of premises liability and was originally recognized by the Illinois Supreme Court in *Gibson v. Leonard*, 143 Ill. 182, 32 N.E. 182 (1892), *overruled by Dini v. Naiditch*, 20 Ill. 2d 406, 170 N.E.2d 881 (1960). In *Gibson*, as well as most other early cases adopting the rule, firefighters were considered to be licensees to whom landowners or occupiers owed no duty other than to warn of known, hidden dangers and to refrain from inflicting intentional or willful harm.

The case of *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129 (1960), marked a change in rationale from basing the firefighter's rule on premises liability to assumption of risk. In *Krauth*, the New Jersey Supreme Court found that "it is the fireman's business to deal with that very hazard and hence . . . he cannot complain of negligence in the creation of the very occasion for his engagement." 31 N.J. at 273-74; see also *Fletcher v. Illinois Central Gulf Railroad Co.*, 679 S.W.2d 240, 243 (Ky. App. 1984) (A firefighter "must be deemed to have assumed the personal risk inherent in dealing with the emergency which necessitated his presence."). Consequently, the *Krauth* court found that "for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling." 31 N.J. at 274.

More recently, a third-generation of cases has based the adoption of the firefighter's rule on a public policy rationale. Although the specific policy reasons given vary from state to state, many courts focus on the nature of the relationship between firefighters and the public they are sworn to serve. For example, in *Moody v. Delta Western, Inc.*, 38 P.3d 1139, 1142 (Alaska 2002), the Alaska Supreme Court found that the rule "reflects sound public policy" because "[t]he public pays for emergency responses of public safety officials in the form of salaries and enhanced benefits. Requiring members of the public to pay for injuries incurred by officers in such responses asks an individual to pay again for services the community has collectively purchased."

7

Finally, several state legislatures have codified the firefighter's rule. See, *e.g.*, N.H. Rev. Stat. Ann. § 507:8-h (2010). On the other hand, other state legislatures have decided to abrogate the rule. See, *e.g.*, Minn. Stat. § 604.06 (2010). To date, however, the Kansas Legislature has taken no action on the firefighter's rule.

*The Adoption of the Firefighter's Rule in Kansas*

The firefighter's rule was adopted by the Kansas Supreme Court as a matter of public policy in *Calvert v. Garvey Elevators, Inc*. Specifically, our Supreme Court held in *Calvert* that "[i]t is a public policy of the State of Kansas that a fire fighter cannot recover for injuries caused by the very situation that initially required his presence in an official capacity and subjected the fire fighter to harm." 236 Kan. 570, Syl. ¶ 1.

In *Calvert*, firefighters responded to an anhydrous ammonia leak at a grain elevator in Seward. Upon arriving at the scene, a fire captain spotted a man lying on the ground in the midst of ammonia vapors. Although there was little chance that the man was still alive, the captain and another firefighter clothed themselves in protective gear and attempted to save the man. Unfortunately, the captain inhaled some of the ammonia vapors and, as a result, suffered a heart attack. Although the captain received workers' compensation benefits, he also filed a petition against the owners of the grain elevator seeking to recover monetary damages. Applying the firefighter's rule, the district court granted summary judgment to the owners of the grain elevator. 236 Kan. at 571.

On appeal, the Kansas Supreme Court discussed the various rationales expressed by courts across the United States for adopting the firefighter's rule. First, it noted that a number of jurisdictions classified firefighters as licensees, while some jurisdictions labeled them as invitees, and others categorized firefighters as sui generis—all of which implicate different duties of care. 236 Kan. at 573 (citing *Buchanan v. Prickett & Son, Inc*, 203 Neb. 684, 279 N.W.2d 855 [1979]; *Fancil v. Q.S.E. Foods, Inc.*, 60 Ill. 2d 552,

8

328 N.E.2d 538 [1975]; *Krauth*, 31 N.J. 270). Next, it noted that several other jurisdictions had relied on an implied assumption of risk analysis to justify the adoption of the rule. 236 Kan. at 573-74 (citing *Baker v. Superior Court*, 129 Cal. App. 3d 710, 181 Cal. Rptr. 311 [1982]).

Although the Kansas Supreme Court ultimately decided to adopt the firefighter's rule, it declined to accept any of these rationales. 236 Kan. at 574-76. Instead, our Supreme Court sided with those jurisdictions that have adopted the firefighter's rule based on the rationale that "[p]ublic policy precludes recovery against an individual whose negligence created the very need for the presence of the fire fighter at the scene in his professional capacity." 236 Kan. at 575. In doing so, it reasoned that "[f]ire fighters are present upon the premises, not because of any private duty owed the occupant, but because of the duty owed to the public as a whole." 236 Kan. at 576.

The *Calvert* court did, however, recognize three exceptions to the firefighter's rule. Specifically, the Kansas Supreme Court found that the firefighter's rule does not prevent recovery: (1) if a third party's negligent or intentional misconduct results in an injury to the firefighter; (2) if the individual responsible for the firefighter's presence engages in subsequent acts of negligence or intentional misconduct upon the arrival of the firefighter at the scene; and (3) if an individual fails to warn of a known, hidden danger on his or her premises or for misrepresentations of the nature of the hazard that harms the firefighter. 236 Kan. at 576. In conclusion, our Supreme Court made it clear that the firefighter's rule in Kansas "is not to be based upon 'premises law,' or categorizing fire fighters as mere licensees when performing their duties, but upon public policy." 236 Kan. at 577.

Fifteen years later, the Kansas Supreme Court considered the firefighter's rule again in *McKernan v. General Motors Corp.*, 269 Kan. 131, 3 P.3d 1261 (2000). In *McKernan*, the issue presented was whether the firefighter's rule barred a product liability claim against a car manufacturer after a hood strut exploded and injured a firefighter

9

attempting to extinguish an automobile fire. In ruling in favor of the firefighter, our Supreme Court found:

> "As stated in *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 576, 694 P.2d 433 (1985), the public policy of Kansas precludes recovery against an individual whose negligence created a need for the presence of the firefighter at the scene in his professional capacity. The rationale behind limiting landowner or occupier liability is that since a large proportion of fires are started by the negligence of the landowner or occupier, it would be unreasonable to make that person respond in damages to the firefighter who is employed and trained for the purpose of fighting such fires. On the other hand, a strong public policy recognized in strict liability law is that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. [Citation omitted.]

> "Allowing products liability claims against parties whose negligence did not create the need for the firefighter at the scene does not frustrate the public policy basis of the Firefighter's Rule as it was adopted in Kansas, but rather promotes the public policy of fixing responsibility for defective products on the party who introduces the product to the market place. The Kansas Firefighter's Rule does not bar a products liability claim against a party whose negligence did not create the need for the firefighter at the scene." 269 Kan. at 140-41.

*Extension of Firefighter's Rule to Law Enforcement Officers*

In *Buck v. B&W, Inc.*, No. 98-2405-GTV, 1999 WL 1007682 (D. Kan. 1999) (unpublished opinion), a Kansas Department of Transportation (KDOT) employee was called to direct traffic at the scene of an accident where a truck transporting cattle had overturned. While directing traffic at the scene, a steer escaped from the overturned trailer, charged the KDOT employee, and caused him to injure his knee. The Honorable G. Thomas VanBebber noted that although directing traffic at an accident scene was not a typical duty performed by KDOT employees, law enforcement officers often relied upon

10

KDOT employees to direct traffic when another officer was unavailable to assist. 1999 WL 1007682, at *1.

In *Buck*, Judge VanBebber wrote that although Kansas courts had not discussed the issue, other jurisdictions had "invariably" extended the firefighter's rule to include law enforcement officers. 1999 WL 1007682, at *2. Similarly, Judge VanBebber concluded that the public policy expressed by the Kansas Supreme Court in *Calvert* applied equally to both firefighters and law enforcement officers. In doing so, he found the public should "be confident that in requesting the assistance of law enforcement officers to aid in situations where their own negligence has created a threat to public safety, they will not be held liable for injuries caused . . . as a result of the risks [they] created." 1999 WL 1007682, at *2.

In addition to the United States District Court for the District of Kansas, the firefighter's rule has also been extended to include law enforcement officers in other jurisdictions. See *Read v. Keyfauver*, 233 Ariz. 32, 38, 308 P.3d 1183 (Ct. App. 2013), *rev. denied* February 11, 2014 (firefighter's rule barred recovery by law enforcement officer in negligence action against motorist for injuries he sustained while pulling motorist from overturned vehicle); *White v. State*, 419 Md. 265, 282, 19 A.3d 369 (2011) (law enforcement officer injured in high-speed chase could not bring suit to recover for injuries sustained from accident during chase); *Babes Showclub, Jaba, Inc. v. Lair*, 918 N.E.2d 308, 315 (Ind. 2009) (law enforcement officer's claims against nightclub stemming from injuries he sustained in assault while responding to complaint of an unruly underage patron were precluded by the firefighter's rule); *Torchik v. Boyce*, 121 Ohio St. 3d 440, 443, 905 N.E.2d 179 (2009) ("[A]ll citizens share the benefits provided by firefighters and police officers and, therefore, should share in the cost of workers' compensation provided to police officers and firefighters injured on the job[; they also] assume the risk of injury by the very nature of their chosen profession and are trained to expect the unexpected."); *Farmer v. B&G Food Enterprises, Inc.*, 818 So. 2d 1154, 1160

11

(Miss. 2002) (law enforcement officer's claims against restaurant arising from injury he sustained while attempting to break up a fight between a patron and restaurant employee were barred by the firefighter's rule); *Moody*, 38 P.3d at 1142 ("Requiring members of the public to pay for injuries incurred by [public safety] officers in such responses asks an individual to pay again for services the community has collectively purchased.").

We pause to note that some states refer to the firefighter's rule as the professional rescuer's doctrine in order to encompass more professions than firefighters. For example, in *Fordham v. Oldroyd*, 131 P.3d 280, 282 (Utah App. 2006), the Utah Court of Appeals found that "[u]nder the professional-rescuer doctrine, 'a professional rescuer ordinarily cannot recover damages for injuries sustained, while responding to an emergency, from the person who negligently created the crisis.' [Citation omitted.]" Nevertheless, the public policy is the same regardless of the name that courts use. See *Fordham*, 131 P.3d at 284.

In *State v. Vistuba*, 251 Kan. 821, 840 P.2d 511 (1992), the Kansas Supreme Court recognized that law enforcement officers are often called upon for public safety reasons:

> "'Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" 251 Kan. at 824 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 [1973]).

Hence, as public safety officers—both firefighters and law enforcement officers—are called upon to respond to a wide range of emergencies in their official capacities. They do so not because of any private duty owed to an individual but because of their sworn duty to the public as a whole. Moreover, like firefighters, law enforcement officers are employed at the taxpayers' expense for the express purpose of dealing with such

12

emergencies. It would be fundamentally unfair to allow a law enforcement officer to seek to recover damages from one who causes an automobile accident but deny this right to a firefighter injured while responding to the same accident. Thus, we find that the public policy expressed in *Calvert* applies equally to firefighters and law enforcement officers when responding to a call for public safety functions.

We recognize that some have questioned whether the firefighter's rule still reflects a sound public policy. See Comment, *Where There's Smoke, There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 Wis. L. Rev. 2031, 2032 n.7 (1992); Wright, *The Missouri "Fireman's Rule": An Unprincipled Rule in Search of a Theory*, 58 UMKC L. Rev. 329 (1990). Nevertheless, our Supreme Court currently recognizes the firefighter's rule as the public policy of the State of Kansas. Moreover, we have not been presented with—nor do we answer in this opinion—the question of whether the firefighter's rule would also apply to a firefighter or law enforcement officer conducting a criminal investigation. Rather, we limit our holding to law enforcement officers who are called upon in their professional capacities to respond for public safety or community caretaking reasons such as automobile accidents caused by the negligence of the person who created the need for the presence of the officer at the scene.

*Recognized Exceptions to the Firefighter's Rule*

As we noted in our discussion of *Calvert*, the Kansas Supreme Court recognizes three exceptions to the firefighter's rule. In anticipation that we might extend the firefighter's rule to law enforcement officers, Officer Apodaca argues that this case falls under two of these exceptions: (1) failure to warn of a known, hidden danger; and (2) engaging in a subsequent negligent or intentional act. In addition, Officer Apodaca argues that we should adopt a willful, wanton, and reckless conduct exception to the firefighter's rule not previously recognized by our Supreme Court.

13

First, Officer Apodaca asserts that Willmore failed to warn of a known, hidden danger by failing to inform the RCPD dispatcher that he had turned off the lights to the disabled pickup. But the record indicates that dispatch informed Officer Apodaca that Willmore's truck was located north of Interstate 70 and that the vehicle was blocking the southbound lanes—the direction in which he was driving. A review of the record also reveals that the dispatcher informed Officer Apodaca that nobody at the scene was injured. That is to say, Officer Apodaca was adequately warned of the situation at the scene of the accident and there was no misrepresentation of the nature of the hazard. See *Calvert*, 236 Kan. at 577 ("When summoned, Calvert had been warned of the danger as it existed and there had been no misrepresentation as to the nature of the hazard."). Moreover, it is not unusual for a wrecked vehicle to be unilluminated as a result of the accident. Thus, we find that the exception for failure to warn of a known, hidden danger is inapplicable.

Second, Officer Apodaca claims that Willmore engaged in a subsequent act of negligence by turning off the lights to his vehicle. That is, he characterizes Willmore's act of turning off the lights to his truck as a subsequent act of negligence. In discussing this exception to the firefighter's rule in *Calvert*, the Kansas Supreme Court found that a firefighter is not barred from recovery "if the individual responsible for the fire fighter's presence engages in subsequent acts of negligence or misconduct *upon the arrival of the fire fighter at the scene*." (Emphasis added.) *Calvert*, 236 Kan. at 576.

Generally, the firefighter's rule covers travel to the scene of a hazard because firefighters are trained in how best to get to the site of a fire, accident, or other emergency. In doing so, firefighters must balance the need for a fast response with their own safety as well as that of other drivers. Law enforcement officers are similarly trained. Moreover, both fire and law enforcement agencies typically have comprehensive policies and procedures for responding to emergencies.

14

Here, Apodaca was in the process of arriving at the scene of the accident when he collided with the pickup truck. Furthermore, Willmore turned off the pickup's lights *prior to* the officers arriving on the scene. Accordingly, we find that the subsequent negligence exception is also inapplicable under the circumstances presented.

*Willful, Wanton, or Reckless Conduct*

Officer Apodaca also contends that we should adopt an additional exception to the firefighter's rule that the Kansas Supreme Court has not previously recognized. Specifically, he asks that we find that a firefighter or law enforcement officer is not barred from recovery if the person responsible for the act that required the presence of the officer at the scene engaged in willful, wanton, or reckless conduct. It should be noted, however, that this issue was raised for the first time by Officer Apodaca when he filed a motion to amend judgment several weeks after the district court entered its memorandum decision and order granting summary judgment in favor of the Willmores.

It is within the district court's discretion to grant or deny a motion to amend judgment under K.S.A. 60-259(a). See *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007). A judicial act constitutes an abuse of discretion if the action is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Miller v. Johnson*, 295 Kan. 636, 684-85, 289 P.3d 1098 (2012). Here, Officer Apodaca does not present any argument in an attempt to show that the district court abused its discretion in denying his motion to amend judgment.

Furthermore, we can find nothing in the record on appeal to indicate that Officer Apodaca ever alleged willful, wanton, or reckless conduct prior to the filing of his motion to amend judgment. For example, the petition only asserts that the Willmores were negligent. Similarly, Officer Apodaca's response to the Willmores' motion for summary judgment does not mention willful, wanton, or reckless conduct by Willmore. In addition,

15

the motion to amend judgment gives no reason why he did not raise the issue of willful, wanton, or reckless conduct before the district court ruled on the summary judgment motions. Thus, we find the district court's conclusion that the filing of the motion to amend judgment was "simply an attempt to revisit issues already addressed or advance arguments that could have been raised in prior briefing" to be reasonable.

We also find that the district court appropriately applied the provisions of K.S.A. 60-259 in denying the motion to amend the judgment. See *Carolina Industrial Products, Inc. v. Learjet, Inc.*, 194 F. Supp. 2d 1170, 1172 (D. Kan. 2002) ("A party may not use a motion to reconsider as a vehicle for raising arguments that should have been raised in the first instance."); *Rebarchek v. Farmers Co-op Elevator & Mercantile Ass'n*, 272 Kan. 546, 552, 35 P.3d 892 (2001) (since the Kansas Code of Civil Procedure is based on the Federal Code of Civil Procedure, federal court decisions interpreting the federal code are highly persuasive).

In addition, Officer Apodaca did not establish in his motion to amend judgment that the district court had made an erroneous legal conclusion in ruling on the motions for summary judgment. In fact, Officer Apodaca recognizes that an exception to the firefighter's rule for willful, wanton, and reckless conduct has not been adopted by the Kansas Supreme Court even though such an exception has long been recognized in some jurisdictions. We may presume the Kansas Supreme Court would have mentioned such an exception in *Calvert*, since the decision appears to offer a comprehensive list of exceptions. See 236 Kan. at 576-77. We, therefore, conclude that the district court did not abuse its discretion in denying Officer Apodaca's motion to amend judgment.

CONCLUSION

In conclusion, we find that the public policy expressed by the Kansas Supreme Court in *Calvert v. Garvey Elevators, Inc*. applies equally to firefighters and law

16

enforcement officers. Accordingly, we hold that the public policy of the State of Kansas precludes recovery against an individual whose negligence created a need for the presence of a firefighter or law enforcement officer at the scene in an official capacity. We do not, however, decide whether the rule would also apply to cases in which firefighters or law enforcement officers are conducting criminal investigations. Moreover, we conclude that none of the exceptions recognized by the Kansas Supreme Court in *Calvert* are applicable in this case. Finally, because the firefighter's rule precludes recovery by Officer Apodaca, we do not address the issue of proximate cause presented in the Willmores' cross-appeal.

Affirmed.